Agostino PERNA and Mobile Medical
Training Unit, L.L.C., Appellants,

v.

Leslie Diane HOGAN, et al., Appellees.

Agostino Perna and Mobile
Medical Training Unit,
L.L.C., Appellants,

v.

Jean Butts, Individually and as Repre-
sentative of the Estate of Dorothy
Hebert, et. al., Appellees.

Agostino Perna and Mobile
Medical Training Unit,
L.L.C., Appellants,

v.

Robert Bland, et al., Appellees.

Agostino Perna and Mobile
Medical Training Unit,
L.L.C., Appellants,

v.

Ricardo Billescas, Individually and as
Representative of the Estate of Imel-
da Billescas Romero, et al., Appellees.

Agostino Perna and Mobile
Medical Training Unit,
L.L.C., Appellants,

v.

Patricia M. Harrison, et al., Appellees.

Agostino Perna and Mobile
Medical Training Unit,
L.L.C., Appellants,

v.

Ted Breezy, Individually and as Repre-
sentative of the Estate of Elizabeth
Ann Breezy, et al., Appellees.

Nos. 14–03–01289–CV, 14–03–01290–CV,
14–03–01293–CV to 14–03–01295–
CV, 14–03–01305–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

650

George W. Vie, III, Galveston, for appellants Agostino Perna and Mobile Medical Training Unit, L.L.C.

Sidney S. Stover, Jasper, for appellees (Case No. 14–03–01289–CV).

Chad Bassett Matthews, League City, Otto D. Hewitt, III, Alvin, Lawrence M. Tylka, Galveston, Alton C. Todd, Friendswood, for appellees (Case No. 14–03–01290–CV).

Barry G. Flynn, T. Bryan Akins, Houston, for appellees (Case No. 14–03–01293–CV).

Sandra Thourot Krider, David George, Houston, for appellees (Case No. 14–03–01294–CV).

Martin J. Siegel, T. Bryan Akins, Houston, for appellees (Case No. 14-03-01295-CV).

Sandra Thourot Krider, Houston, for appellees (Case No. 14-03-01305-CV).

Panel consists of Justices ANDERSON, HUDSON and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

A number of individuals donated their bodies[1] to the Anatomical Board of the State of Texas (the "Anatomical Board"), the agency responsible for overseeing the Willed Body Program in Texas. The Anatomical Board assigned the bodies to the University of Texas Medical Branch at Galveston ("UTMB"). After the donor bodies were used for medical, science, and educational purposes, they were cremated. Appellees[2]—members of the donors' families—allege that the ashes of the donor participants' cremated bodies were either not returned to them or were commingled

1. The donors involved in this appeal are Imelda Billescas Romeros, Catherine Boileau Bland, Janice Olivia Kelley, Leslie David Hogan, Dorothy Hebert, Hayden Hodges, Betty Breezy, Michael Hargrave, Bonnie Stanford O'Neal, Billie Kohlenberg, Edna Mahaffy, Billy Everett, George Davis Oliver, Sr., Linda Porritt, James B. McCaslin, John Whitworth, Michael Graf, Paul Carrig, and Pearl Ethel Purvis.

2. Appellees in this appeal are:

*Hogan suit:* Leslie Diane Hogan, David W. Hogan, Donald A. Hogan, and Clifford E. Hogan;

*Butts suit:* Jean Butts, Individually and as Representative of the Estate of Dorothy Hebert, James Nelson, Sue McKnight, Heather Keithly, Amy McKnight, Sandra Clemons, Diana Hodges, Individually and as Representative of the Estate of Hayden Hodges, Alden Hodges, Joe Stutzman, David Stutzman, Linda DeLeon, Cherri Pellerin, Phylls Eckerson, Hilda Rodefeld, Sherri Sonntag-Rodefeld, Emory Brockway, Michael Brockway, Christopher Chatelain, Susan McHugh, John McHugh, Martha Harris, Leslie Koester, Tyra Yesh Ochoa, Louis Shields, Chris Philips, Betty Brown, Susan Boatright, Tracy Andrew, Shawn Melton, Davette Pickard, H. Dean Clark, Yola Clark, Willa Jayne, Joel Aiston, Lavem [sic] Aiston, Pamela Bean, Jill Scoggins, and Francis Matthews Henry;

*Bland suit:* Robert Bland, Mary Hargreaves, Michael Robert Bland, Patrick Boux Bland, and Robert Dallas Bland;

*Billescas suit:* Ricardo Billescas, Individually and as Representative of the Estate of Imelda Billescas Romeros, Irma Young, Veronica Lopez, Yolanda B. Garcia, and Belia V. Zamora;

*Harrison suit:* Patricia M. Harrison, Michael C. Murphy, Billy G. Odom, B. Alan Odom, Lisa Odom, David P. Odom, Tamara L. Odom, Gary B. Black, Charles H. McBride, Mike McBride, Johnna [sic] J. Higginbotham, Tamara Stelly, Robert Thomas, Celeste Fontenot, Ruth Ahmed, Barbara Erwin, Emily Erwin Hebert, Thomas Kelley Ewrin, Henry Blake Erwin, Sidney A. Brown, Kerri Olivia Bettes, Individually and as Representative of the Estate of Janice Olivia Kelley, and James K. McDow, Jr.; and

*Breezy suit:* Ted Breezy, Individually and as Representative of the Estate of Elizabeth Ann Breezy, Joan Breezy Speer, Kathleen Hagan, Victoria Quinn, Paul Hargrave, Individually and as Representative of the Estate of Michael Hargrave, LeAnna Lankford, Individually and as Representative of the Estate of Bonnie Standard O'Neal, Sandra Kohlenberg, Individually and as Representative of the Estate of Billie Kohlenberg, Joann Cooper, Individually and as Representative of the Estate of Edna Mahaffey, George Oliver, Jr., Individually and as Representative of the Estate of George Davis Oliver, Sr., Tana Everett, Clifton Everett, Individually and as Representative of the Estate of Billy Everett, Daron C. McCaslin, Individually and as Representative of the Estate of James B. McCaslin and Edna Pauline McCaslin, Todd Sisson, Individually and as Representative of the Estate of Linda Porritt, Shad Sisson, Brandi Landuyut, Harriet Whitworth, Individually and as Representative of the Estate of John Whitworth, Samuel Whitworth, Barbara Hunt, Melinda Slaughter, Individually and as Representative of the Estate of Michael Graf, Lacy Graf, Andrew Graf, Helen Carrig, Individually and Representative of the Estate of Paul Carrig, Theresa Carrig, Kay Callin, and Martin Carrig, Tina Vaughn,

with the cremated remains of other donors.

Appellees sued Agostino Perna ("Perna") and Mobile Medical Training Unit, L.L.C. ("Mobile Medical"), alleging that they bought and sold human body parts and profited from such trade and that they purchased body parts from UTMB and Allen Tyler, the supervisor of the Willed Body Program at UTMB. Appellees further alleged Perna and Mobile Medical should have known that bodies and body parts they received or purchased from Tyler were being transferred to them illegally and that any resale was also illegal. Appellees brought claims for negligence, negligence per se, gross negligence, breach of contract, constructive fraud, fraud, intentional infliction of emotional distress, and vicarious liability, and sought actual and punitive damages.[3]

Perna and Mobile Medical filed special appearances, which the pretrial court denied. In this interlocutory appeal, Perna and Mobile Medical appeal the pretrial court's order denying their respective special appearances.[4] We reverse the order of the pretrial court and dismiss these six cases against Perna and Mobile Medical.

■ A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct.

1271, 154 L.Ed.2d 1025 (2003); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex. 1990).

■ The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The Texas long-arm statute specifically provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.* While the statute enumerates several specifics acts constituting "doing business," it also includes "other acts that may constitute doing business." *Schlobohm,* 784 S.W.2d at 357. The "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991).

■ The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the

---

Individually and as Representative of the Estate of Pearl Ethel Purvis, and Kevin Tippie.

**3.** Appellees also sued, among a number of others, UTMB and the Anatomical Board.

**4.** On April 21, 2003, the six cases in this consolidated appeal (among others) were as-

signed to a pretrial court for consolidated pretrial proceedings pursuant to Rule 11 of the Texas Rules of Judicial Administration. TEX.R. JUD. ADMIN. 11, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F. app. (Vernon 1998), *amended by* Supreme Court order, Misc. Docket No. 03–9145, effective Aug. 31, 2003.

provisions of the Texas long-arm statute. *Coleman,* 83 S.W.3d at 806; *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). The nonresident defendant then has the burden of negating all bases of personal jurisdiction. *National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995). If the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas, the defendant can satisfy its burden of negating all bases of personal jurisdiction by presenting evidence that it is a nonresident at the special appearance hearing. *Experimental Aircraft Ass'n, Inc. v. Doctor,* 76 S.W.3d 496, 502 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *M.G.M. Grand Hotel, Inc. v. Castro,* 8 S.W.3d 403, 408 n. 2 (Tex.App.-Corpus Christ 1999, no pet.); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied).

Perna and Mobile Medical argue appellees' pleadings do not support the exercise of long-arm jurisdiction. In their various petitions, appellees allege that Allen Tyler of UTMB illegally transferred and/or sold bodies and/or body parts that were willed to UTMB to Perna and Mobile Medical so that they could resell them to for-profit medical equipment and training companies and private labs and hospitals. It was also alleged that Perna and Mobile Medical breached the duty to use ordinary care in ascertaining the origins of body parts provided by or purchased from Tyler, to refrain from acquiring, reselling, or disposing of body parts, and to treat the donors' bodies with dignity and respect, and to return the ashes of the donors to designated family members.

■ We find appellees have not alleged facts in their petitions bringing Perna and Mobile Medical within the Texas long-arm Statute, *i.e.,* that Perna or Mobile Medical committed any act in Texas. However, a plaintiff's failure to make jurisdictional allegations in the petition is not subject to attack by the specially appearing defendant. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 202–03 (Tex.1985); *McDermott v. Cronin,* 31 S.W.3d 617, 620 (Tex.App.-Houston [1st Dist.] 2000, no pet.). But while the specially appearing defendant cannot attack the plaintiff's petition, the defendant can meet his burden of proof in such cases by simply presenting evidence that he is not a Texas resident. *McDermott* 31 S.W.3d at 620. Because appellees did not allege that Perna or Mobile Medical committed any act in Texas, Perna and Mobile Medical satisfied their burden to negate all bases of personal jurisdiction by presenting evidence demonstrating that they are non-residents—a fact no one seems to dispute.

■ However, even if appellees had alleged facts in their respective petitions demonstrating acts in Texas (as they subsequently did in their responses to the special appearances), the evidence adduced at the special appearance hearing falls short of bringing Perna and Mobile Medical within the ambit of the Texas long-arm Statute.

Perna and Mobile Medical filed special appearances asserting the trial court lacked personal jurisdiction over them. The *Bland* and *Harrison* plaintiffs filed identical responses to Perna's and Mobile Medical's special appearances. The *Billescas* and *Breezy* plaintiffs adopted the *Harrison* plaintiffs' response by reference. In their response to the special appearances, the *Harrison/Billescas/Bland/Breezy* plaintiffs asserted that Perna personally came to Texas over the course of four years and illegally purchased 300 cadavers from UTMB and Southwestern Universi-

ty.[5] They also asserted that Perna solicited business in Texas, conducted seminars in Texas, and contracted with a Texas citizen, Allen Tyler, to perform work both in and outside Texas. The *Harrison/Billescas/Bland/Breezy* plaintiffs further claimed that Perna paid Tyler $80,000 for his work and Tyler's invoices were mailed from Texas and Perna mailed Tyler's payments to Texas. The record contains no response to the special appearances by the *Hogan* plaintiffs.

Although the *Harrison/Billescas/Bland/Breezy* plaintiffs' responses cite to Perna's deposition as evidentiary support, the deposition transcript was neither attached to those responses nor otherwise filed in the pretrial court. Moreover, at the hearing on the special appearances, no evidence was offered by appellees; instead, appellees referred the pretrial court to the written responses on file with the court.

The *Butts* and *Breezy* plaintiffs filed "motions to confer jurisdiction" in which they complained they had been denied the opportunity to fully develop issues regarding jurisdiction and contacts because of Perna and Mobile Medical's failure to cooperate with the discovery process. Specifically, they complained of Perna's failure to provide documents in response to discovery and challenged the truthfulness of his interrogatory answers on behalf of Mobile Medical. Attached to the motions to confer jurisdiction were excerpts from Perna's deposition that mostly concern appellees' trial counsel's attempts to determine the veracity of his answers to interrogatories.

Submitted in support of Perna's and Mobile Medical's special appearances were excerpts from Perna's deposition and the affidavits of Perna, in his individual capacity and as an officer of Mobile Medical. Perna states in his individual affidavit that he:

- is a New Jersey resident, and is not and has never been a resident of Texas;
- has never maintained a registered agent in Texas;
- has never had any employees or agents, in his individual capacity, in Texas;
- has never maintained an office, mailing address, or telephone number in Texas;
- has never owned any assets, maintained a bank account, or owned, leased or controlled any real or personal property in Texas;
- has never paid or been required to pay taxes in Texas;
- has never, in his individual capacity, entered into a contract or conducted any business with any Texas business, citizen or resident;
- has never entered in any contract with UTMB, Allen Tyler, or any other employee or agent of UTMB; and
- has never held any board of director's, officer's, or other official meeting in Texas.

Perna states that UTMB has supplied human torsos for medical seminars conducted in states other than Texas. Perna also explains that another entity, IMET (Innovations in Medical Education and Training, L.L.P.), a medical conference coordinator, arranges for the leasing of human torsos for medical training seminars. Mobile Medical takes temporary

---

**5.** The parties' use of the names "Southwestern University" and "Southwestern Medical School" is presumably a reference to the University of Texas Southwestern Medical Center at Dallas, which encompasses Southwestern Medical School, Southwestern Graduate School of Biomedical Sciences, and Southwestern Allied Health Sciences School.

custody of torsos during a medical seminar, but Perna does not, in his individual capacity, take custody of torsos or arrange for their shipment or disposition, but only as an employee or officer of one of these entities. Perna states that the torsos are leased for use at medical seminars and remain the property of UTMB. Another entity, SBF (Surgical Body Forms), which furnishes video equipment and surgical equipment and instruments for use at medical seminars, paid Allen Tyler an honorarium for consulting work and preparing torsos for presentation at medical seminars.

Perna further states in his affidavit that he has not appeared in Texas in his individual capacity. Instead, on each of the three occasions Perna was in Texas, his presence was as an employee or officer of IMET, Mobile Medical, A. Perna Consulting or SBF. Perna explains that he was in Houston on two occasions when IMET conducted medical seminars at Baylor College of Medicine in November 2001, and in May 2002. Perna was in Dallas on one occasion to meet with Melinda More at Southwestern University/Medical School on behalf of IMET concerning the amount of lead time the school would need to furnish a torso to a seminar.

Perna also states that none of the torsos used at the two medical seminars in Houston at which he was present correspond to any of the SAB [6] numbers for the bodies of the donors at issue here. Perna admits, however, that the SAB numbers corresponding to the bodies of Catherine Bland, Ruth Black, Linda Porritt, and Scherri Maxine Tompkins were furnished to other seminars (not necessarily in Texas) involving Mobile Medical, IMET, A. Perna Consulting, and/or SBF.

6. Perna explains that SAB numbers are assigned by the Anatomical Board to any torso

According to Perna, when UTMB furnished a torso for a seminar, UTMB paperwork dictated that after the completion of the seminar, the torso was to be cremated in the state where the seminar was conducted, and the ashes disposed of in accordance with the laws of that state. UTMB did not require that the ashes be returned to Texas.

In his capacity as an officer of Mobile Medical, Perna states that Mobile Medical:

- is a New Jersey limited liability company, which does not and has never been required to maintain a place of business in Texas, but, instead, maintains its offices in Pennsylvania where it conducts its business operations;

- is not required to and has never maintained a registered agent in Texas;

- except in November 2001, and May 2002, when IMET conducted two medical seminars at Baylor College of Medicine in Houston, does not have and has never had any employees or agents in Texas;

- has never maintained an office, mailing address, or telephone number in Texas;

- has never owned any assets or maintained a bank account in Texas;

- has never paid or been required to pay taxes in Texas;

- except for certain torsos it leased from the Willed Body Programs of UTMB and Southwestern University, has never owned, leased, rented or controlled any real or personal property in Texas; and

- has never held any board of director's, officer's or other official meeting in Texas.

received by UTMB through its Willed Body Program.

Perna claims the evidence is legally and factually insufficient to support the pretrial court's findings of fact. Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *Coleman*, 83 S.W.3d at 805–06; *BMC Software*, 83 S.W.3d at 794; *C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

If the trial court enters an order denying a special appearance, and issues findings of fact and conclusions of law, the appellant may challenge the findings of fact on legal and factual sufficiency grounds. *BMC Software*, 83 S.W.3d at 794. The trial court's findings of fact are binding on the appellate court unless challenged on appeal. *Hotel Partners*, 847 S.W.2d at 632. We may not disregard findings of fact if the record contains some evidence from which inferences may be drawn, unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *Experimental Aircraft Ass'n, Inc.*, 76 S.W.3d at 503.

We review the trial court's conclusions of law as legal questions. *BMC Software*, 83 S.W.3d at 794. While the appellant may challenge the conclusions of law for factual insufficiency, we review the conclusions of law drawn from the facts to determine their correctness. *Id.* If we determine a conclusion of law is erroneous, but trial court rendered a proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

*Finding of Fact No. 1.a*

- Perna, individually and on behalf of Mobile Medical, personally came to Texas numerous times, to solicit business in Texas, purchase cadaver torsos in Texas, and conducted seminars in Texas.

There is no evidence that Mobile Medical or Perna individually arranged, facilitated, or conducted medical seminars in Texas involving the use of torsos. Any actions by Perna were taken as an employee or officer of one of the entities. Perna testified at deposition that Mobile Medical participated in a medical seminar in Houston as a subcontractor and was paid as a subcontractor. There is no evidence that Perna had been to Texas numerous times, but only on three occasions—two seminars at Baylor College of Medicine and one meeting at Southwestern Medical School. Nor is there any evidence that Perna or Mobile Medical purchased any torsos. Another entity, IMET, arranged for the leasing of torsos for medical seminars. The torsos remained the property of UTMB. Although Perna had a meeting at Southwestern University on behalf IMET, which was already obtaining bodies from the medical school, to discuss the amount of lead time the school needed to furnish a torso for a seminar, there is no evidence that Perna, individually or on behalf of Mobile Medical, solicited business in Texas.

*Finding of Fact 1.b*

- Perna, individually and on behalf of Mobile Medical, purchased as many as 300 cadaver torsos from UTMB, Southwest University, and other sources.

There is no evidence that either Perna or Medical Mobile purchased any torsos; instead, IMET arranged for the lease of the torsos, which remained the property of UTMB. Mobile Medical takes only temporary custody of the torsos during a medical seminar.

*Finding of Fact 1.c*

- Perna, individually and on behalf of Mobile Medical, shipped torsos purchased in Texas to seminars that Perna and Mobile Medical conducted in Texas and other states.

Again, there is no evidence that either Perna or Mobile Medical purchased any torsos, and, as stated above, IMET arranged for the leasing of the torsos for the medical seminars and Mobile Medical only took temporary custody of the torsos during the seminars. Perna made arrangements for the shipment, furnishing, and disposition of torsos as an employee or officer of one of the entities, not individually.

*Finding of Fact 1.d*

- Perna, individually and on behalf of Mobile Medical, through a subsidiary company, marketed the services of Mobile Medical in Texas.

There is no evidence that Perna personally marketed the services of Medical Mobile in Texas or that there was any subsidiary company of Mobile Medical.

*Finding of Fact 1.e*

- Perna, individually and on behalf of Mobile Medical, came to Texas to negotiate the purchase of torsos from Allen Tyler, a Texas citizen, and also contracted with Tyler to perform consulting work both in and outside of Texas.

Again, there is no evidence that Perna or Mobile Medical purchased any torsos or that Perna individually or Mobile Medical entered into any contract with Tyler. SBF, not Perna or Mobile Medical, paid Tyler an honorarium as a consultant and for the preparation of torsos for presentation at medical seminars.

*Finding of Fact 1.f*

- Perna, individually and on behalf of Mobile Medical, paid Tyler well in ex-

cess of $80,000. The invoices Tyler presented for his fees were mailed from Texas, and the payments from Perna and Mobile were mailed to Texas.

There is no evidence that Perna or Mobile Medical paid Tyler for his services; instead, the evidence shows that Tyler was a consultant to SBF, which paid him an honorarium. Similarly, there is no evidence in the record of Tyler's invoices for payment of his fees or of any payments by Perna, Mobile Medical, or any other entity sent to Tyler.

*Finding of Fact 1.g*

- Perna, individually and on behalf of Mobile Medical, contracted with Dr. Zurawin for a seminar at Baylor College of Medicine to work for Mobile Medical.

Perna testified at deposition that Dr. Zurawin taught a course with IMET at Baylor College of Medicine in November 2001. Perna also stated that Dr. Zurawin was the primary person who administered that program. However, there is no evidence that Perna or Mobile Medical contracted with Dr. Zurawin.

*Finding of Fact No. 2*

- Perna hired Texas citizens, both over the phone and during trips to Texas to perform various services at his seminars.

There is no evidence that Perna individually hired Texas citizens over the phone or during trips to Texas to perform services at any medical seminar. Tyler, a Texas citizen, was a consultant to SBF, which paid him an honorarium for his work at medical seminars.

*Finding of Fact No. 3*

- Perna acted as a corporate agent for Mobile Medical for the detailed activities conducted in Texas.

Perna stated in his affidavit and at deposition that his work performed for Mobile Medical (and the other entities) was in his capacity as an employee or officer. The evidence, therefore, supports this finding.

*Finding of Fact No. 4*

- Other employees of Mobile Medical came to Texas for a conference in 2001.

Perna testified at deposition that Mobile Medical technicians, Mr. Neubert and Mr. Myers, came to the November 2001 seminar in Houston. Therefore, the evidence supports this finding.

We conclude the evidence does not support findings of fact Nos. 1.a through 2 and, therefore, those findings do not support the exercise of personal jurisdiction over Perna and Mobile Medical. While the evidence supports findings of fact Nos. 3 (Perna's having acted on behalf of Mobile Medical in Texas as an officer or employee) and 4 (Mobile Medical's employees' working at a medical seminar in Texas), as shown below, those findings do not support the exercise of personal jurisdiction over Perna and Mobile Medical.

Among its conclusions of law, the pretrial court held that Perna and Mobile Medical knowingly participated in the commission of activities in Texas and failed to negate all possible bases for personal jurisdiction; Perna's and Mobile Medical's contacts were knowingly and intentionally directed at Texas and harm in Texas was foreseeable; Perna and Mobile Medical are subject to specific jurisdiction in Texas because the cause of action arises out of, and is related to, their contacts with Texas; and the exercise of personal jurisdiction over Perna and Mobile Medical is consistent with the constitutional requirements of due process and will not offend principles of fair play and substantial justice.

■ Due process consists of two components: (1) whether the nonresident defendant has purposefully established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Guardian Royal Exchange,* 815 S.W.2d at 226 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *Coleman,* 83 S.W.3d at 806. A nonresident defendant who has purposefully availed itself of the privileges and benefits of conducting business in the forum state has sufficient contacts with the forum to confer personal jurisdiction on the court. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant reasonably could anticipate being called into a Texas court. *Coleman,* 83 S.W.3d at 806. The purposeful availment requirement insures that the nonresident defendant's contact must result from its purposeful conduct, not the unilateral activity of the plaintiff or a third party. *Guardian Royal Exchange,* 815 S.W.2d at 227.

■ In determining whether a nonresident defendant has purposefully established minimum contacts with the forum state, "foreseeability" is a significant consideration. Although not an independent component of the minimum-contacts analysis, foreseeability is implicit in determining whether there is a "substantial connection" between the defendant and the forum state. If a nonresident, by its actions or

conduct, has purposefully availed itself of the state's benefits and the protections of its laws, then it has established a substantial connection with the state and subjected itself to the state's jurisdiction. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 410 (Tex.App.-Houston [14th Dist.] 1997, no writ) (plurality op.) (citing *Guardian Royal Exchange*, 815 S.W.2d at 226–27).

■ The nonresident defendant's contacts can give rise to two types of jurisdiction. The first is specific jurisdiction, which is established when the plaintiff's cause of action arises out of, or relates to, the defendant's contacts with the forum state. *Id.* The defendant's activities must have been purposefully directed toward the forum state. *Guardian Royal Exchange*, 815 S.W.2d at 228. Under specific jurisdiction, the minimum-contacts analysis, focuses on the relationship among the defendant, the forum, and the litigation. *Id.*

The evidence shows Perna came to Texas on three occasions—two medical seminars in Houston and one meeting in Dallas—on behalf of one of the entities. There is no evidence that Perna and Mobile Medical purchased any torsos from Tyler or anyone else at UTMB. Instead, IMET arranged for the leasing of the torsos and Mobile Medical received temporary custody of the torsos at the medical seminars. The evidence further shows that none of the donor bodies at issue in the six consolidated cases were used in

either the November 2001 or May 2002 medical seminars. Similarly, the evidence does not indicate that Perna's visit to Southwestern University was related in any way to UTMB's willed body program. Finally, there is no evidence that Perna, in his individual capacity, entered into any contract with UTMB, Tyler, or any other employee or agent of UTMB.

Appellees argue that Perna can be held individually liable for tortious acts committed while working for Mobile Medical. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (stating general rule that corporate agents are individually liable for fraudulent or tortious acts committed while in service of their corporation). As discussed above, the evidence supports finding of fact No. 3, *i.e.*, Perna acted on behalf of Mobile Medical in Texas. However, even if we impute liability for Perna's activities performed on behalf of Mobile Medical as an employee or officer to him individually, those contacts with Texas, as shown above, are not sufficient to give rise to specific jurisdiction.[7]

■ Appellees further contend Perna and Mobile Medical committed torts in Texas. However, committing a tort in Texas alone does not give rise to personal jurisdiction over a nonresident defendant. *Id.* at 133. Instead, there must be a substantial connection between the contact and the cause of action in the forum state. *Id.* There is no evidence that any of the torsos used in either of the medical semi-

7. Perna and Mobile Medical argue the fiduciary shield doctrine, which provides that corporate officers are not subject to jurisdiction in a foreign forum when their actions are taken in a representative capacity, precludes exercising jurisdiction over Perna for any contacts he may have had as an officer of Mobile Medical. *See Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 487 (Tex.App.-San Antonio 2003, no pet.); *Shapolsky*, 56

S.W.3d at 133 n. 6; *Brown v. General Brick Sales Co.*, 39 S.W.3d 291, 297–98 (Tex.App.-Fort Worth 2001, no pet.). The Texas Supreme Court has not explicitly adopted the fiduciary shield doctrine. Moreover, thus far, it has been applied by intermediate courts of appeals to preclude the exercise of general jurisdiction, not specific jurisdiction. *Stern*, 123 S.W.3d at 488; *Shapolsky*, 56 S.W.3d at 133 n. 6; *Brown*, 39 S.W.3d at 300.

nars belonged to the donors at issue in the six consolidated cases in this appeal. We conclude Perna's and Mobile Medical's contacts with Texas are not sufficient to confer specific jurisdiction.

■ The second type of jurisdiction is general jurisdiction, which is established by the defendant's continuous and systematic contacts with the forum. Such contacts permit the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from, or relate to, the defendant's activities conducted within the forum state. *Coleman,* 83 S.W.3d at 806; *CSR Ltd.,* 925 S.W.2d at 595. Under general jurisdiction, the minimum-contacts analysis is more demanding, requiring a showing of substantial activities within the forum state. *Schlobohm,* 784 S.W.2d at 357. Each contact is not viewed in isolation; instead, all contacts are carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. *Coleman,* 83 S.W.3d at 809.

Perna states in his affidavit that he is a New Jersey resident and he is not and has never been a resident of Texas; has never maintained a registered agent in Texas; has never had any employees or agents in Texas; has never maintained an office, mailing address, or telephone number in Texas; has never owned any assets, maintained a bank account, or owned, leased or controlled any real or personal property in Texas; has never paid or been required to pay taxes in Texas; has never, in his individual capacity, entered into a contract or conducted any business with any Texas business, citizen or resident; and has never held any board of director's, officer's, or other official meeting in Texas.

In his capacity as an officer of Mobile Medical, Perna states that Mobile Medical is a New Jersey limited liability company, which does not and has never been required to maintain a place of business in Texas, but, instead, maintains its offices in Pennsylvania, where it conducts its business operations; it is not required to and has never maintained a registered agent in Texas; except in November 2001, and May 2002, when IMET conducted two medical seminars at Baylor College of Medicine in Houston, it does not have and has never had any employees or agents in Texas; it has never maintained an office, mailing address, or telephone number in Texas; it has never owned any assets or maintained a bank account in Texas; it has never paid or been required to pay taxes in Texas; except for certain torsos it leased from the Willed Body Programs of UTMB and Southwestern University, it has never owned, leased, rented, or controlled any real or personal property in Texas; and it has never held any board of director's, officer's or other official meeting in Texas.

Appellees assert Perna came to Texas numerous times, on behalf of Mobile Medical and other related entities, to solicit business, purchase torsos, and conduct seminars. They also contend Perna purchased as many as 300 torsos in Texas over a four-year period, at a total estimated cost of $360,000. Aside from the fact that there is no evidence that Perna came to Texas on more than three occasions, and assuming that Perna purchased (or leased) 300 torsos over a four-year period, " 'mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.' " *Coleman,* 83 S.W.3d at 808 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)); *see also Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 n. 3 (5th Cir. 1990) (stating "purchases and trips related

thereto, even if they occur regularly, are not, standing alone, a sufficient basis for the assertion of jurisdiction"). There is no evidence that those 300 alleged purchases or leases are related to appellees' causes of action against Perna and Mobile Medical; therefore, any such purchases or leases from Texas, standing alone, will not support the exercise of general jurisdiction. We conclude that Perna's and Mobile Medical's contacts in Texas do not constitute continuous and systematic activities necessary to confer general jurisdiction.[8]

We conclude the pretrial court erred in denying Perna's and Mobile Medical's special appearances. Accordingly, the pretrial court's order denying Perna's and Mobile Medical's special appearances is reversed and the six cases in this consolidated appeal against Perna and Mobile Medical are dismissed.

8. Because we do not find that either Perna or Mobile Medical has the requisite minimum contacts, we do not reach the fair play and substantial justice analysis.