**Affirmed and Memorandum Opinion filed July 25, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00371-CV

---

### LG CHEM AMERICA, INC. AND LG CHEM, LTD., Appellants

### V.

### JUSTIN WILSON, Appellee

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-03817**

---

## M E M O R A N D U M   O P I N I O N

Appellants LG Chem America, Inc. ("LG America") and LG Chem, Ltd. ("LG Chem") appeal the denial of their special appearances in this products-liability suit filed by appellee Justin Wilson. After reviewing the record and the parties' arguments, we hold that Wilson established that his claims are sufficiently related to the appellants' purposeful contacts with Texas, and we affirm.

## Background

According to his live pleading, Wilson was standing in his driveway when, without warning, the battery in his electronic cigarette "exploded" and caught fire in his pants pocket. The device's lithium-ion battery, model number 18650, was designed, marketed, and/or manufactured by LG America and LG Chem. LG America is a Delaware corporation headquartered in Georgia; LG Chem is a Korean company headquartered in South Korea (collectively, the "LG Defendants"). Wilson asserted various theories of products liability against the LG Defendants.

The LG Defendants filed special appearances challenging the trial court's personal jurisdiction. The LG Defendants contended that they were not incorporated or headquartered in Texas and thus were not subject to general jurisdiction. Additionally, to refute the exercise of specific jurisdiction, LG Chem's authorized representative admitted that LG Chem manufactures model 18650 lithium-ion cells "for use in specific applications by sophisticated companies" but averred that LG Chem "does not design or manufacture 18650 lithium-ion cells for sale to individual consumers as standalone batteries" and "does not distribute, advertise, or sell 18650 cells directly to consumers." Similarly, LG America's compliance manager averred that LG America "never designed, manufactured, distributed, advertised, or sold any lithium-ion cells for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarettes or vaping devices" and "never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller . . . to advertise, distribute, or sell LG brand power cells in Texas . . . for use by individual consumers as power cells in e-cigarette or vaping devices." The LG Defendants did not deny that they manufacture, market, distribute, and sell model 18650 batteries to some customers

in Texas, such as companies Stanley Black and Decker and Hewlett Packard, which incorporate the batteries as components of those companies' products.

Wilson responded to the special appearances. Regarding specific jurisdiction, Wilson contended that LG Chem "directly targets the Texas market with its lithium-ion battery sales." Wilson also asserted that LG American is LG Chem's wholly owned United States subsidiary, which "markets and sells [LG Chem's] lithium-ion batteries to retailers located . . . in Texas," and that Wilson was injured by a battery that he purchased from a retailer in Texas.

Based on jurisdictional discovery, Wilson stated that LG America "produced documentation showing that it shipped 23,600 18650 batteries to Austin, Texas in just two days in late April of 2016," and that LG Chem "produced documentation showing that it shipped 481,555 18650 batteries to Austin, McAllen, Dallas, and Houston, Texas from late 2016 through early 2018." Wilson submitted numerous exhibits consisting of, among other things, thousands of pages of spreadsheets, purportedly reflecting U.S. Customs Service data, showing LG Chem's shipments of thousands of products to Texas companies or through Texas ports.[1] Some, but not all, of these entries show that LG Chem shipped lithium-ion batteries (and specifically model 18650 batteries) to Texas. Many of those shipments were consigned to LG America, a subsidiary that is wholly owned by LG Chem and that is responsible for "sales and/or distribution" of LG Chem's products in the United States. Wilson also produced an excerpt from a hearing in another lawsuit involving LG Chem, in which LG Chem's counsel allegedly conceded that LG Chem ships lithium-ion model 18650 batteries directly into Texas. Wilson's trial

---

[1] These exhibits originally had been filed in another case against the LG Defendants that was appealed to the First Court of Appeals and then to the Supreme Court. *See LG Chem Am., Inc. v. Morgan*, 663 S.W.3d 217, 224-25 (Tex. App.—Houston [1st Dist.] 2020), *aff'd*, *LG Chem Am., Inc. v. Morgan*, ---S.W.3d---, 2023 WL 3556693 (Tex. May 19, 2023).

counsel filed a sworn declaration, stating that each exhibit was a true and correct copy.

The LG Defendants objected to some of Wilson's exhibits—principally the evidence purporting to be importation records from U.S. Customs—as containing inadmissible hearsay, speculation, and conclusory statements, as well as being unauthenticated, and lacking a foundation. The trial court did not sign an order ruling on the LG Defendants' objections or otherwise rule orally during a hearing.

The trial court denied the LG Defendants' special appearances, and they filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

## Scope of Evidence

Before turning to the merits, we first address the LG Defendants' argument that the trial court erroneously overruled their objections to Wilson's evidence. We determine that the LG Defendants did not preserve their complaint for appeal.

As a prerequisite for presenting a complaint on appeal, the record must show that the complaining party timely asserted a proper objection and obtained an explicit or implicit ruling from the trial court. *See* Tex. R. App. P. 33.1(a)(1), (2). If the trial court refuses to rule on the objection, the complaining party must object to the refusal. Tex. R. App. P. 33.1(a)(2)(B).

The LG Defendants did not obtain an explicit ruling on their evidentiary objections. They contend that the trial court "implicitly overruled [their] evidentiary objections" by specifying in its order that the court considered the "pleadings, evidence, and arguments of counsel." "An implicit overruling is one that, though unspoken, reasonably can be inferred from something else." *Trevino v. City of Pearland*, 531 S.W.3d 290, 299 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A ruling may be implied from the record when the implication is "clear."

4

*Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam) (citing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) (finding that when the trial court proceeded to trial without ruling on the request for a bench warrant, it was clear the trial court implicitly denied the request)).  When, for example, a court rules on a motion without first addressing a party's objections to certain evidence, the court's disposition on the objections may not be sufficiently clear.  *See id.* (a statement that the court considered "the [summary-judgment] motion, briefs, 'all responses, and all competent summary-judgment evidence'" does not constitute a "clearly implied ruling").

Here, the trial court's order denying the special appearances stated that the court considered Wilson's response, Wilson's supplemental response, and the "evidence."  But Wilson's evidence consisted of numerous exhibits, only four of which drew objection from the LG Defendants and none of which the court specifically addressed in its order denying the special appearances.  Accordingly, it is not clear whether the trial court denied the special appearances after determining (correctly or incorrectly) the challenged evidence was admissible or because, after sustaining (some or all of) the LG Defendants' objections, the court found (correctly or incorrectly) the remaining admissible evidence was otherwise sufficient to support personal jurisdiction.  *See id.*  Thus, we conclude the record does not reveal clearly that the trial court implicitly overruled the LG Defendants' objections.  *See id.* at 164; *see also Hause v. LG Chem, Ltd.*, 658 S.W.3d 714, 720 (Tex. App.—El Paso 2022, pet. filed) (LG Defendants waived objections to evidence by not obtaining ruling in trial court).

For this reason, we reject the LG Defendants' argument that an earlier decision from this court, *LG Chem America, Inc. v. Zapata*, controls the disposition of this case.  In *Zapata*, we held that the trial court abused its discretion in

overruling the LG Defendants' objections to the same evidence they challenge in this case and, further, that the remaining admissible evidence was not sufficient to establish personal jurisdiction. *See LG Chem Am., Inc. v. Zapata*, No. 14-21-00695-CV, 2022 WL 16559339, at \*4-6 (Tex. App.—Houston [14th Dist.] Nov. 1, 2022, no pet.) (mem. op.). *Zapata* is distinguishable because there the LG Defendants obtained an explicit adverse ruling on their objections. *See id.* at \*2 ("At the oral hearing, appellants renewed their previous objections to Zapata's exhibits. Zapata responded that the trial court could take judicial notice of the documents. The trial court announced that it was denying appellants' special appearances and was overruling their objections to Zapata's exhibits. The trial court subsequently signed an order memorializing its oral rulings."). Because the LG Defendants preserved error, we analyzed whether the trial court abused its discretion in overruling their objections. *See id.* at \*4-5.

But here, in contrast, the trial court did not explicitly overrule the LG Defendants' objections, and the record does not clearly show that the trial court ruled implicitly. Thus, as a prerequisite to presenting their evidentiary complaint on appeal, the LG Defendants were required to object to the court's failure to rule. *See* Tex. R. App. P. 33.1(a)(2)(B). The record does not indicate that they complied with this rule. Therefore, in the absence of a properly preserved complaint, we will not examine the propriety of the trial court's consideration of the challenged evidence, which remains part of the record before us.

We now turn to the merits of the LG Defendants' special appearances.

**Personal Jurisdiction**

**A.      Governing Standards**

A court must have personal jurisdiction over a defendant to issue a binding judgment. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7-8 (Tex. 2021). Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).   The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state, which includes committing a tort in whole or in part in Texas.   *See* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.043.

The exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.— Houston [14th Dist.] 2013, no pet.).  Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws.  *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017).

"[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state." *Int'l Shoe*, 326 U.S. at 319; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  These benefits and protections include "the enforcement of contracts, the

defense of property, [and] the resulting formation of effective markets." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1029 (2021). But the forum state's assistance creates reciprocal obligations, including an obligation that products the defendant sells or distributes in the state be safe for its citizens to use. *Id.* at 1030. A state's enforcement of that commitment through the exercise of personal jurisdiction can "hardly be said to be undue." *Id.* (internal quotation omitted).

A nonresident defendant's purposeful contacts with a forum state can give rise to either general or specific jurisdiction, *id.* at 1024, but Wilson contends the court has jurisdiction over the LG Defendants only under the theory of specific jurisdiction. Specific jurisdiction generally exists if the defendant's alleged liability arises out of or is related to his purposeful activity conducted within the forum. *See Moki Mac*, 221 S.W.3d at 576. Thus, the specific-jurisdiction analysis involves "two co-equal components": purposeful availment and relatedness. *Id.* at 579.

Regarding the first component, the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state. *Luciano*, 625 S.W.3d at 8. In products liability cases, the Supreme Court of Texas has adopted the "stream-of-commerce-plus" standard. *LG Chem Am., Inc. v. Morgan*, ---S.W.3d---, 2023 WL 3556693, at *4 (Tex. May 19, 2023) (citing *Luciano*, 625 S.W.3d at 13; *Moki Mac*, 221 S.W.3d at 577). Under that standard, the defendant's act of placing a product into the stream of commerce does not establish purposeful availment unless there is "additional conduct" evincing "an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577 (internal quotations omitted). Mere knowledge that the defendant's product will reach the

forum state is not sufficient. *Luciano*, 625 S.W.3d at 13 (citing *CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex. 1996)).

Regarding the second component, the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Id.* at 9. "This so-called relatedness inquiry defines the appropriate 'nexus between the nonresident defendant, the litigation, and the forum.'" *Id.* at 14 (quoting *Moki Mac*, 221 S.W.3d at 579). The plaintiff must demonstrate a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. Tex. R. Civ. P. 120a. In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 17.042; *Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.). If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. A defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets his burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *Id.* at 660.

We review de novo a trial court's decision regarding a special appearance. *See M&F Worldwide*, 512 S.W.3d at 885.

## B.    Application

In two related issues, the LG Defendants contend that the trial court erred in denying their special appearances.  The LG Defendants first argue that Wilson did not meet his initial pleading burden.  Wilson's amended petition included the following jurisdictional allegations:

- LG Chem does "a substantial amount of business in Texas."

- The LG Defendants are "in the business of designing, manufacturing, marketing, constructing, and/or otherwise placing batteries, such as the one in question, into the stream of commerce."

- The battery that injured Wilson was "designed, manufactured, marketed, and constructed by the [LG Defendants]."

Wilson also alleged that he bought the model 18650 battery from a store in Texas, that the battery did not include any warning about foreseeable risks, and that the battery's defective condition was not observable by Wilson.

In his special appearance response, Wilson further alleged that LG Chem manufactured lithium-ion model 18650 batteries like the one that injured him and that it targeted the Texas market for such batteries by selling them to Texas customers through its distributor, LG America.[2]  Wilson also asserted that LG America markets, distributes, and sells LG Chem's batteries in Texas, that LG

---

[2] We may consider the plaintiff's response to a special appearance in conjunction with the pleadings in determining whether the plaintiff met the initial burden to plead sufficient jurisdictional allegations.  *See Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc).

10

America "likely fulfills delivery and distribution" of lithium-ion batteries in Texas, and that, "on information and belief, [LG America] also participates in the delivery of goods directly to the State of Texas." Wilson allegedly bought one of those batteries in Texas, which did not have a warning label, and claims he was injured when it exploded and caught fire in his pocket. According to Wilson, the battery contained an inherent risk of harm that could arise from its intended or reasonably anticipated use. These allegations are sufficient to meet Wilson's initial burden to show that the LG Defendants were doing business in Texas under the long-arm statute. *See* Tex. Civ. Prac. & Rem. Code § 17.042; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871, 873 (Tex. 2010) (stating that a manufacturer is subject to specific personal jurisdiction in Texas when it intentionally targets Texas as the marketplace for its products, and that marketing product in forum is additional conduct beyond merely placing product into stream of commerce indicating intent or purpose to serve market in forum); *see also Morgan*, 2023 WL 3556693, at *1-2.

The burden thus shifted to the LG Defendants to negate all bases of alleged jurisdiction. *See Kelly*, 301 S.W.3d at 658. They contend that, even if Wilson's allegations are true, the claims do not give rise to personal jurisdiction because the LG Defendants never sought to sell to or market to an individual consumer market for standalone lithium-ion batteries for e-cigarettes.

The Supreme Court of Texas recently rejected this precise argument as to these defendants. *Morgan*, 2023 WL 3556693, at *5-8. In that case, Morgan sued LG Chem and LG America for products liability after allegedly sustaining injuries when his model 18650 e-cigarette battery exploded in his pocket. *Id.* at *1. To support his position that the trial court had personal jurisdiction over the LG Defendants, Morgan submitted the same evidence that Wilson submitted in this

11

case, including the importation data from U.S. Customs. The trial court denied the LG Defendants' special appearances, which the First Court of Appeals affirmed. *Id.* at *3. On review, the supreme court affirmed and held that Morgan's claims were sufficiently related to the LG Defendants' contacts with Texas to satisfy due process for the exercise of personal jurisdiction. *Id.* at *5-8.

In reaching its decision, the supreme court rejected the LG Defendants' argument that they should not be subjected to personal jurisdiction because they only target industrial manufacturers in Texas, not individual consumers like Morgan. *Id.* at *5. The court stated that "there is no requirement for jurisdictional purposes that the market segment the [LG Defendants] served be precisely the same one from which [the plaintiff consumer] purchased the battery." *Id.* at *6. By selling and distributing model 18650 batteries in Texas, the court continued, the LG Defendants "purposefully availed themselves of Texas and have enjoyed the benefits and protection of Texas laws," regardless whether the LG Defendants may not have anticipated a claim would be brought by someone outside their intended chain of distribution. *Id.* The court concluded that it does not violate due process for Texas to exercise personal jurisdiction over the LG Defendants when Morgan was injured by the very product—the model 18650 lithium-ion battery—they sold and shipped to Texas. *Id.* at *5-6.

The facts, evidence, and arguments in today's case are materially indistinguishable from *Morgan*, which controls our disposition. As in *Morgan*, the LG Defendants in this case do not dispute that they purposefully availed themselves of the privilege of conducting activities in Texas through the sale, shipment, or distribution of model 18650 batteries to, at the least, Texas manufacturers. Rather, also as in *Morgan*, the crux of the LG Defendants' argument is that they never targeted a consumer market for model 18650

12

standalone batteries Texas or anywhere else. In other words, they argue that the second component of personal jurisdiction—relatedness—is lacking because Wilson's claims are insufficiently related to the LG Defendants' Texas contacts.

Following the supreme court's precedent, we decline the LG Defendants' invitation to focus on whether Wilson is within the particular market segment they intended to serve in Texas. Our focus instead is whether it would violate due process for a Texas court to exercise personal jurisdiction over the LG Defendants for claims by a plaintiff allegedly injured by the very product the LG Defendants sold and shipped by the thousands to Texas, the forum state. *Id.* at *5; *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship *to the forum State*.") (emphasis added). Although there need not be "a strict causal relationship between the defendant's in-state activity and the litigation," *Ford*, 141 S. Ct. at 1026, there still must be a "'connection' between a plaintiff's suit and the defendant's activities." *Morgan*, 2023 WL 3556693, at *4 (quoting *Ford*, 141 S. Ct. at 1026). This relatedness requirement is satisfied when a company "serves a market for a product in the forum State and the product malfunctions there." *Ford*, 141 S. Ct. at 1026-27.

Therefore, we conclude that the LG Defendants' due process rights are not violated by the court's exercise of personal jurisdiction over them in this case. By selling and distributing model 18650 batteries in Texas, the LG Defendants purposefully availed themselves of the privilege of conducting business in Texas and have enjoyed the benefits and protection of Texas laws. *See Morgan*, 2023 WL 3556693, at *5-6; *see also Ford*, 141 S. Ct. at 1029. Texas's enforcement of the LG Defendants' reciprocal obligation to ensure that model 18650 batteries are

13

safe for Texas citizens such as Wilson can "hardly be said to be undue." *Ford*, 141 S. Ct. at 1030.

For these reasons, we hold that the LG Defendants are subject to specific personal jurisdiction in Texas for this case.

## Conclusion

We overrule the LG Defendants' issues on appeal and affirm the trial court's order.

/s/　Kevin Jewell
　　　Justice


Panel consists of Justices Jewell, Hassan, and Wilson.