**ORYX CAPITAL INTERNATIONAL, INC., Appellant,**

v.

**SAGE APARTMENTS, L.L.C, Appellee.**

No. 04–04–00879–CV.

Court of Appeals of Texas, San Antonio.

May 18, 2005.

Jon G. Shepherd, Gibson, Dunn & Crutcher L.L.P., Dallas, for appellant.

David L. Treat, John Welsh, Lindow & Treat, L.L.P., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This is an interlocutory appeal from an order denying a special appearance of an out-of-state defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004–2005). We deny Sage Apartments, L.L.C.'s motion to lift the stay of proceedings and its motions to dismiss. We also deny Oryx Capital International, Inc.'s motion for sanctions. We further reverse the trial court's special appearance order and render judgment dismissing the claims of Sage Apartments, L.L.C. against Oryx Capital International, Inc.

### BACKGROUND

The underlying lawsuit arises out of the sale of an apartment complex known as Sage Crossing Apartments, which is located in San Antonio, Texas. Syndicate Exchange Corporation,[1] purchased the apartment complex from TVO Harpers Crossing, L.P. in May of 2003.[2] Following the closing of the sale, SEC discovered numerous defects at the apartment complex that were not disclosed during the parties' negotiations. Sage Apartments, L.L.C., SEC's successor in interest, filed suit against several different entities, including Oryx Capital International, Inc., for common law fraud, statutory fraud, and negligent misrepresentation based on the entities' misrepresentations/omissions concerning the condition of the Sage Crossing Apartments.[3] According to Sage, Oryx was one of the key negotiators with SEC concerning the apartment complex and, as a result, SEC relied heavily on the information furnished by Oryx.

Oryx filed a special appearance, asserting that it is a Delaware corporation that does business exclusively in Illinois. Oryx alleged that general jurisdiction does not exist over the corporation because Oryx has not had continuous or systemic contacts with Texas. According to Oryx, its only role in the transaction between TVO and SEC was to locate investors to purchase shares in a limited partner of TVO, Harper's Crossing Investments, Inc., which it performed outside of Texas. Oryx further alleged that specific jurisdiction does not exist over the corporation because Sage's causes of action do not arise from or relate to any of its contacts with Texas.

After a special appearance hearing, the trial court denied Oryx's special appearance.[4] The trial court did not file findings of fact or conclusions of law. Oryx subsequently brought this appeal. Shortly after Oryx filed its notice of appeal, Oryx requested that we stay all further pro-

---

1. SEC is a Texas corporation with its principal place of business in Encino, California.

2. TVO is a Texas Limited Partnership with its principal place of business in San Antonio, Texas.

3. SEC organized Sage as a Texas limited liability company for purposes of owning and managing the Sage Crossing Apartments. Sage's principal place of business is in San Antonio, Texas.

4. The Honorable Karen Pozza of the 131st Judicial District Court of Bexar County, Texas signed the order denying Oryx's special appearance.

ceedings in the underlying suit, including discovery, pending the resolution of the appeal. This court granted Oryx's request and entered an order staying all further proceedings in the underlying suit. Our January 12, 2005 stay order provided:

> [Oryx] has filed a motion to stay all further proceedings in the underlying suit, including discovery, pending the resolution of this interlocutory appeal. Although [Sage] opposes the request, we shall grant [Oryx's] motion.
>
> [Sage] filed suit against [Oryx] and multiple other entities for statutory fraud in a real estate transaction, common law fraud, and breach of contract. [Oryx] filed a special appearance, which the trial court denied. It appeals that denial. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004–2005). By statute, the trial of the underlying suit is stayed pending resolution of this appeal. *Id.* § 51.014(b). [Oryx] requests that discovery be suspended as to all defendants listed in the original petition because "[i]f discovery is allowed to go forward against the other defendants, [Oryx] essentially would be forced to participate in discovery and risk wasting time, money, and judicial resources." [Sage] responds that a stay is not warranted as to any of the defendants because it will further delay the resolution of the underlying lawsuit.
>
> We believe [Oryx] should not be required to submit to the expense and inconvenience of discovery pending the resolution of this appeal. To ensure that [Oryx] does not incur the expense and inconvenience of discovery, we believe that all discovery at the trial court level should be stayed pending resolution of the appeal of the special appearance. **Accordingly, all further pro-**

**ceedings at the trial court level are STAYED pending resolution of this appeal or further order of this court.** *See Lattin v. Barrett,* 127 S.W.3d 276, 277 (Tex.App.-Waco 2003, order) (staying discovery at trial court level as to all defendants pending resolution of one defendant's interlocutory appeal of special appearance ruling); *see also Lacefield v. Elec. Fin. Group, Inc.,* 21 S.W.3d 799, 800 (Tex.App.-Waco 2000, order). (emphasis added).

Oryx filed its appellant's brief with this court on January 26, 2005. On February 15, 2005, the date Sage's appellee's brief was due to be filed with this court, Sage filed a notice to non-suit Oryx in the trial court. The trial court non-suited Oryx later that same day.[5] Approximately thirty minutes after the trial court entered its dismissal order, Sage filed a Third Amended Petition in the underlying suit. This petition once again named Oryx as a defendant and raised the same claims against Oryx. This petition, however, pleaded additional jurisdictional facts to demonstrate that Oryx falls within the provisions of the Texas long-arm statute.

Sage subsequently presented this court with a motion to dismiss Oryx's appeal as moot based on the dismissal order entered by the trial court. Sage's motion provides, "[a]s the claims against Oryx in the underlying suit have been dismissed, [Sage] respectfully requests the Court dismiss Oryx's appeal as moot." However, the motion did not reveal that Sage had already filed an amended petition in the trial court, which once again named Oryx as a defendant. Shortly thereafter, Sage filed a supplemental motion to dismiss reasserting that we dismiss Oryx's appeal as moot. Sage also filed a motion requesting us to

---

5. The Honorable Rebecca Simmons then-presiding judge of the 408th Judicial District Court of Bexar County, Texas signed the order dismissing Oryx from the case.

lift the stay of proceedings to allow Oryx to be non-suited from the case.

Oryx filed a response to Sage's dismissal motions, arguing we should deny the motions because the trial court's non-suit order is void, as it was entered in violation of our January 12, 2005 stay order. Oryx also filed a "Motion to Review Further Orders and Motion for Sanctions," asking us to sanction Sage for deliberately violating our stay order and for intentionally omitting critical facts from its filings in this court. Following Oryx's sanction motion, Sage filed its appellee's brief addressing the trial court's special appearance ruling.

### SAGE'S MOTIONS TO DISMISS

■ As a preliminary matter, we must determine whether we should grant Sage's motions to dismiss Oryx's appeal. In its motions, Sage claims we should dismiss Oryx's appeal because Sage's non-suit rendered Oryx's appeal moot. We disagree.

When this court stayed all proceedings in the trial court, the parties and the trial court were ordered to take no further action on the case until they received further orders from this court or we resolved the appeal. See TEX.R.APP. P. 29.3 ("When an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security."). By filing its notice of non-suit and asking the trial court to sign the order of dismissal, Sage violated our stay order.

Moreover, Sage caused the trial court to violate our order as well.

■ We recognize that plaintiffs, like Sage, generally have "'an absolute, unqualified right to take a non-suit upon timely motion as long as [the] defendant has not made a claim for affirmative relief.'" However, we also recognize that litigants must comply with the orders of this court. See In re Martinez, 77 S.W.3d 462, 464 (Tex.App.-Corpus Christi 2002, orig. proceeding) (acknowledging that both litigants and the lower court must respect appellate court's stay order). If Sage desired to non-suit its claims against Oryx, Sage should have asked this court to lift our stay so that it could file its non-suit in the trial court.[6] Instead, Sage chose to circumvent our authority. Because this court's order prohibited the continuation of proceedings in the trial court until further notice from this court, the trial court had no authority to entertain Sage's non-suit motion or enter the order of dismissal. See TEX.R.APP. P. 29.5 ("While an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and may make further orders, including one dissolving the order appealed from ... But the court must not make an order that ... is inconsistent with any appellate court temporary order...."). The trial court's order dismissing Oryx from the case was entered in direct violation of our order and is therefore void.[7] Consequently, Oryx's appeal is not moot because Oryx remains a party to the underlying suit. Sage's motions to dismiss are denied.

---

6. We recognize that Sage eventually filed, in this court, a motion to lift the stay of proceedings. This motion, however, was filed well after the trial court had already entered its dismissal order. We deem Sage's efforts to lift the stay too little, too late. Sage's motion to lift the stay of proceedings is therefore denied.

7. See In re Martinez, 77 S.W.3d at 464 (holding non-suit order signed by trial court was void when it was entered in direct violation of court of appeals's stay order). There is no indication in the record that Sage ever informed the trial court of our stay order.

Sage cites *Le v. Kilpatrick*, 112 S.W.3d 631 (Tex.App.-Tyler 2003, no pet.), for the proposition that a litigant may take a non-suit even when an appellate court has entered an order staying all further proceedings in the trial court. In *Le*, the defendants filed an interlocutory appeal from the trial court's denial of their special appearances. 112 S.W.3d at 633. Sometime after the defendants filed their notice of appeal, the Twelfth Court of Appeals stayed the trial court proceedings pending the resolution of defendants' appeal. *Id.* at 635. Despite the stay, the plaintiffs in the underlying suit filed a notice of non-suit in the trial court. *See id.* at 633. When the trial court granted the non-suit, the plaintiffs filed a motion to dismiss the defendants' appeal as moot. *See id.* The court of appeals subsequently vacated the order denying the defendants' special appearances, lifted its stay of the trial court proceedings, and dismissed the appeal as moot. *Id.* at 635. Absent from the Twelfth Court's decision, however, is any discussion concerning the plaintiffs' disregard of the stay order. While our sister court may have tolerated the litigant's disregard of its authority in *Le*, this court is simply unwilling to accept the type of behavior exhibited by Sage in the case at bar. Therefore, we decline to follow *Le*.

### Oryx's Motion for Sanctions

■ Although we strongly disapprove of the manner in which Sage disregarded this court's stay order, we decline to impose sanctions on Sage. When Sage filed its notice of non-suit in violation of our stay of proceedings, it pursued a course of action implicitly approved of by the Twelfth Court of Appeals. *See id.* Because Sage pursued a course of action supported by case law from one of our sister courts, we will not sanction Sage for such conduct.

With respect to Sage intentionally omitting facts from its filings with this court, we will give Sage the benefit of the doubt and assume any omissions were inadvertent. Nevertheless, Sage's omissions demonstrate a lack of attention to detail and a failure to appreciate the importance of being accurate and forthright when appearing before this court on appeal. *See* Texas Lawyer's Creed-A Mandate for Professionalism, (adopted by the Supreme Court of Texas and the Court of Criminal Appeals, Nov. 7, 1989), *reprinted* in Texas Rules of Court 669, 671 (West 2005) ("I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage."). Oryx's motion for sanctions is denied.

### Oryx's Special Appearance

■ Having concluded that Oryx's appeal is not moot, we must now consider whether the trial court erred in denying Oryx's special appearance. Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002). Trial courts, however, frequently must resolve questions of fact in resolving this question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). When the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we presume that the trial court resolved all factual disputes in favor of its judgment. *Id.* at 795. If the record includes both the reporter's and clerk's records, as in this case, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* In reviewing a legal sufficiency challenge, the no evidence challenge fails if there is more than a scintilla of evidence to support the finding. *Id.* When we review a factual sufficiency challenge, we set aside the trial court's

decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *French v. Glorioso*, 94 S.W.3d 739, 744 (Tex.App.-San Antonio 2002, no pet.). The legal conclusions the trial court draws from its findings are reviewed *de novo*. *BMC Software*, 83 S.W.3d at 794. If a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

A Texas court may exercise jurisdiction over a nonresident defendant only if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and federal constitutional guarantees of due process. *Id.* at 795. The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident that does business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). The long-arm statute defines "doing business" as: (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas; (2) commission of a tort in whole or in part in Texas; (3) recruitment of Texas residents, directly or through an intermediary located in Texas, for employment inside or outside Texas; or (4) performance of any other acts that may constitute doing business. *Id.* The Texas long-arm statute extends "as far as the federal constitutional requirements of due process will permit." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). Thus, the requirements of the long-arm statute are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident de-

fendant if: (1) the defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum-contacts analysis requires a defendant to "purposefully avail" itself of the privileges and benefits of conducting business within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "The defendant's activities, whether they are direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Coleman*, 83 S.W.3d at 806. A defendant is not subject to the jurisdiction of this state if its Texas contacts are random, fortuitous, or attenuated. *Id.* "Nor can a defendant be haled into a Texas court for the unilateral acts of a third party." *Id.* In conducting a minimum-contacts analysis, it is the quality and nature of the defendant's contacts, rather than their number, that is important. *Id.*

A defendant's contacts with a forum state may give rise to either general or specific jurisdiction. *Id.* Specific jurisdiction exists when: (1) the defendant's contacts with the forum are purposeful; and (2) the cause of action arises from or relates to those contacts. *Id.* General jurisdiction exists when a defendant's contacts in the forum are continuous and systematic. *Id.* at 807. General jurisdiction therefore allows the forum state to exercise jurisdiction over the defendant even if the cause of action did not arise from or relate to the defendant's activities within the forum. *Id.* at 806–07.

"Once it has been determined that the nonresident defendant purposeful-

ly established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice." *Guardian Royal,* 815 S.W.2d at 228. These factors include: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Id.* Because the minimum-contacts analysis encompasses so many considerations of fairness, it is unlikely that the exercise of jurisdiction will fail the fair-play analysis. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357–58 (Tex. 1990).

▆▆▆ The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software,* 83 S.W.3d at 793. Upon filing a special appearance, the nonresident defendant assumes the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* Where the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas, the defendant can satisfy its burden of negating all bases of personal jurisdiction by presenting evidence that it is a nonresident. *Perna v. Hogan,* 162 S.W.3d 648, 652 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.). If the defendant produces evidence negating jurisdiction, the burden returns to the plaintiff to show as a matter of law that the court has jurisdiction over the defendant. *Gutierrez v. Cayman Islands Firm of Deloitte &*

*Touche,* 100 S.W.3d 261, 273 (Tex.App.-San Antonio 2002, pet. dism'd); *M.G.M. Grand Hotel, Inc. v. Castro,* 8 S.W.3d 403, 408 (Tex.App.-Corpus Christi 1999, no pet.).

▆▆▆ In this case, the parties limit their arguments to whether Oryx's contacts with Texas give rise to specific jurisdiction. We therefore limit our review to whether specific jurisdiction exists over Oryx. After reviewing the record and the parties' contentions, we are of the opinion that Texas does not have jurisdiction over Oryx.

In its original petition, Sage alleges that Oryx, along with several other co-defendants: (1) failed to disclose various code violations at the Sage Crossing Apartments; (2) misrepresented that certain roof repairs had been made on the apartment complex; (3) failed to disclose various plumbing defects at the apartment complex; (4) misrepresented that adequate drainage existed at the apartment complex; (5) misrepresented that only six of the apartment complex's boilers were broken; (6) misrepresented that the apartment complex's siding did not leak during rain storms; and (7) misrepresented that rent collections were approximately $260,000 per month. Sage's petition, however, does not allege that any of the aforementioned misrepresentations/omissions occurred in Texas. Because Sage's pleadings do not specifically allege any grounds for personal jurisdiction over Oryx, Oryx satisfied its burden to negate all bases of personal jurisdiction when it presented evidence demonstrating that it is a nonresident.[8] The burden was thus on Sage to show as a matter of law that the court had jurisdiction over Oryx. *See Castro,* 8 S.W.3d at 408.

To demonstrate that Oryx is subject to the jurisdiction of a Texas court, Sage cites

---

8.  *See Perna,* 162 S.W.3d at 652. Oryx presented affidavit evidence indicating that Oryx is a

Delaware corporation, with its principal place of business in Illinois.

to its response to Oryx's special appearance. Sage's response identifies several contacts Oryx had with Texas as a result of its efforts to sell the Sage Crossing Apartments. These contacts include: (1) a November 5, 2001 letter Frank Marmo, an Oryx representative, sent to REOC Partners, Ltd., a Texas brokerage firm, concerning The National Farm Workers of California's interest in the Sage Crossing Apartments; (2) a December 19, 2002 letter John Tung, the managing director of Oryx, sent to REOC concerning TVO's desire to sell the Sage Crossing Apartments to SEC; (3) negotiations John Tung conducted with TVO and REOC in Texas before the sale of the apartments concerning the commission REOC would receive for brokering a deal between TVO and SEC; and (4) a January 13, 2003 meeting between Frank Marmo and two SEC representatives (Richard Segal and David Silberstein) at the Sage Crossing Apartments concerning SEC's decision to purchase the apartment complex. Sage asserts that these contacts demonstrate Oryx falls within the ambit of the Texas long arm statute.

After considering Sage's contentions, we must conclude that Oryx is not subject to the jurisdiction of a Texas court. None of Sage's causes of action arise from or relate to any of the Texas contacts described in its special appearance response. *See Guardian Royal*, 815 S.W.2d at 227–28 (specific jurisdiction established if alleged liability arises out of or is related to activity conducted within forum). From Sage's special appearance response it is evident that Sage's causes of action concern various representations Oryx allegedly made to SEC about the physical condition of the Sage Crossing Apartments during the due diligence period of the sale. Sage's response specifically provides:

> This case arises out of the purchase and sale of an apartment complex known as Sage Crossing Apartments ("Sage Crossing"). In May 2003, TVO Harpers Crossing, L.P. ("TVO" or "Seller") sold Sage Crossing to Syndicate Exchange Corporation ("SEC" or "Buyer"). Oryx Capital International, Inc. and Oryx Capital Corporation ("Oryx"), through its representatives, were integral parties to the subject real estate transaction. One particular representative, John Tung, was a key negotiator, if not, the negotiator, that dealt with SEC and its representatives prior to the closing sale. SEC relied heavily on information provided by Oryx and/or John Tung *during the due diligence period* prior to the closing of the purchase of the sale of Sage Crossing.
>
> Following the closing of the sale, SEC discovered numerous defects relating to the physical condition of Sage Crossing. Seller and its agents failed to make complete and truthful disclosures regarding the condition of the property, in spite of numerous inquiries by SEC. *Sage Apartments, L.L.C.* ("Plaintiff") now brings this suit due to the numerous material misrepresentations made regarding the condition of the property *during the due diligence period* and the associated defects discovered by SEC after the closing of the sale. Because Plaintiff's claims relate to the tortious conduct of Seller and Seller's agents, including Oryx, and because many of these misrepresentations resulted from Oryx's direct contact with the Buyer, Oryx's Special Appearance should be denied. (emphasis added).

According to the record, the due diligence period discussed above did not begin until January 21, 2003, the date SEC and TVO entered their "Agreement of Purchase and Sale." All of the Texas contacts Sage focuses on in its special appearance response concern Oryx's contacts with

Texas before the due diligence period began. However, Sage did not sue for any misrepresentations/omission arising from Oryx's pre-due diligence period contacts with Texas. Instead, Sage limited its suit to Oryx's alleged misrepresentations during the due diligence period. Specific jurisdiction over Oryx cannot be maintained in Texas based on Oryx's pre-due diligence period contacts with Texas because Sage's causes of action do not relate to or arise from such contacts. Accordingly, we hold Sage failed to meet its burden of proving that the trial court had jurisdiction over Oryx. Oryx's special appearance issue is sustained.

### CONCLUSION

Based on the foregoing, we deny Sage's motion to lift the stay of proceedings and motions to dismiss. We also deny Oryx's motion for sanctions. We further reverse the trial court's special appearance order and render judgment dismissing Sage's claims against Oryx.