NOVAMERICAN STEEL, INC.
and Nova Tube and Steel,
Inc., Appellants

v.

DELTA BRANDS, INC., Appellee.

No. 05–07–00047–CV.

Court of Appeals of Texas,
Dallas.

Aug. 10, 2007.

---

**504**

Bryan Roger Haynes, Jason L. Sanders and Johnathan E. Collins, Lock, Liddell & Sapp LLP, Dallas, for Appellant.

Lawrence J. Friedman, Friedman & Feiger, LLP, Dallas, William Russell Jenkins, Jackson Walker, L.L.P., Fort Worth, Darrell Wayne Cook, Patrick C. Patterson, Darrell W. Cook & Associates, P.C., Dallas, TX, for Appellant.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion by Justice LANG.

Appellants Novamerican Steel, Inc. (Novamerican) and Nova Tube and Steel, Inc. (NTS) appeal the trial court's order denying their special appearances in a suit brought by appellee Delta Brands, Inc. (DBI). In five issues, appellants contend the trial court erred in concluding specific and general jurisdiction exists over them.[1] Specifically, appellants contend the trial court's findings of fact and conclusions of law are factually and legally insufficient to confer jurisdiction and the trial court erred as a matter of law in concluding specific and general jurisdiction exists. Assuming without deciding the findings of fact are supported by legally and factually sufficient evidence, we conclude the trial court erred as a matter of law in its conclusion that specific jurisdiction and general jurisdiction exists over appellants. For the reasons set forth below, we reverse the trial court's order and render judgment dismissing DBI's claims against these appellants for lack of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

NTS is incorporated in Delaware and owned by Novamerican, a Canadian corporation. Appellants do not have offices or employees in Texas. They do not directly advertise or distribute marketing materials in Texas. However, appellants maintain a company website on the Internet. DBI, with facilities and headquarters in Irving, Texas, designs and manufactures metal processing machinery, including heavy gauge rotary shears, to sell to steel companies.

In 2000, NTS contracted to purchase a heavy gauge rotary shear from DBI. DBI designed and manufactured the shear in Texas. The contract provided delivery "FOB Irving, Texas." Appellants monitored the progress of the shear's manufac-

---

1. In five issues, appellants argue: (1) the trial court erred in finding specific jurisdiction over Novamerican and NTS, (2) the trial court erred in finding general jurisdiction over Novamerican and NTS, (3) the trial court erred in finding that Novamerican and NTS operate as "alter egos," (4) the exercise of jurisdiction offends traditional notions of fair play and substantial justice, and (5) the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law.

ture and directed their shared employees to make trips to Texas to inspect the equipment. In addition, appellants opened and maintained a bank account in Texas and wired funds into that account for the purpose of paying DBI in accordance with the terms of the contract.

Terry DeClue, an employee of DBI who had an office at DBI's headquarters in Irving, Texas, was responsible for assisting appellants with the purchase and installation of the shear. Over the course of the manufacturing process, DeClue had numerous communications with Novamerican and NTS employees. Also, according to DBI, DeClue "had access to a full set of DBI drawings, including full drawings for the rotary shear." DBI alleges DeClue kept these drawings for the design of the shear and subsequently gave them to appellants. After the shear was manufactured and delivered to NTS, NTS recruited and hired DeClue. According to appellants and DeClue, DeClue acts solely as an independent contractor for NTS.

On September 8, 2006, DBI viewed a marketing video of one of its competitors, Alcos Machinery, Inc. In the video, Alcos depicted a heavy gauge rotary shear and claimed it could build such a shear. According to DBI, DBI is the only designer and manufacturer of such shears "in the world." DBI alleged Alcos distributed that marketing video across North America. DBI identifies the shear shown in the video as the specific shear it manufactured for NTS in 2001. Also, DBI states the shear depicted in the video bore Alcos labels which DBI claims replaced DBI's labels. Former NTS employee DeClue also appeared in the video. After viewing this video, DBI filed a lawsuit against Alcos, NTS, and DeClue in the trial court

below alleging that NTS conspired with Alcos and DeClue to unlawfully use DBI's design for the manufacturing of a heavy gauge rotary shear.[2] In addition, DBI joined claims in that suit against Alcos, Novamerican, NTS, and DeClue for conversion, civil theft, misappropriation of trade secrets, and civil conspiracy.

In response, Novamerican, NTS, and Alcos filed special appearances and DeClue filed a motion to transfer venue.[3] On January 8, 2007, the trial court denied the special appearances of Novamerican and NTS. Thereafter, the trial court issued findings of fact and conclusions of law. Appellants now bring this appeal.

## II. STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *Id.* The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574, 50 Tex. Sup.Ct. J. 498, 499, (Tex., 2007). A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.*

If the trial court issues findings of fact and conclusions of law in ruling on the special appearance, the appellant may challenge the legal and factual sufficiency of the evidence to support the findings and appellate courts may review the legal and factual sufficiency of the evidence to support the findings. *See BMC Software,* 83 S.W.3d at 794. A legal sufficiency chal-

---

**2.** Defendants Alcos and DeClue are not parties to this appeal.

**3.** The record does not reflect the trial court's rulings on Alcos and DeClue's motions.

lenge to the findings of fact will not be sustained if there is more than a scintilla of evidence to support the findings. *Id.* at 795. In conducting a factual sufficiency review, appellate courts may set aside a trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand,* 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.).

We review the trial court's legal conclusions *de novo. BMC Software,* 83 S.W.3d at 794. Specifically, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.* If the appellate court determines a conclusion of law is erroneous, but the trial court rendered proper judgment, the erroneous conclusion of law will not require reversal. *Id.* We may address first the correctness of the trial court's conclusions of law and assume for purposes of analysis that the trial court's findings of fact are supported by sufficient evidence. *See MedCost, L.L.C. v. Loiseau,* 166 S.W.3d 421, 426 (Tex.App.-Austin 2005, no pet.). When a trial court's conclusions of law are erroneous, we need not decide the sufficiency of the evidence supporting the fact findings. *Id.*

### III. SPECIFIC JURISDICTION

In their first issue, appellants contend the trial court erred, as a matter of law, in concluding specific jurisdiction exists over appellants because "DBI's claims do not arise out of or relate to any purposeful contacts by Novamerican and NTS with Texas." Appellants generally challenge the trial court's findings of fact and conclusions of law regarding specific jurisdiction without identifying any one particular finding which is unsupported by evidence.[4] In

response, DBI argues appellants are subject to specific jurisdiction because they had minimum contacts with Texas that specifically related to DBI's claims in this case.

### A. Applicable Law

A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To establish minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities inside Texas and enjoyed the benefits and protections of Texas laws. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied). The defendant's activities must justify a conclusion the defendant could reasonably anticipate being called into a Texas court. *Reiff,* 115 S.W.3d at 705.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795–96. Specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *Moki Mac,* 221 S.W.3d 569, 575; *BMC Software,* 83 S.W.3d at 796; *Oryx Capital Int'l, Inc. v. Sage Apt. L.L.C.,* 167 S.W.3d 432, 443 (Tex.App.-San Antonio 2005, no pet.).

---

**4.** Appellants contest particular findings in their fifth issue on appeal. However, because of our disposition of appellants' first two is-sues we need not address appellants' remaining issues.

The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790 (Tex.2005); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a "substantial connection between those contacts and the operative facts of the litigation." *Moki Mac,* 221 S.W.3d at 584.

In *Oryx,* the San Antonio Court of Appeals reversed the trial court's denial of the nonresident defendant's special appearance, holding the plaintiff's claims did not arise out of or relate to the nonresident's contacts with Texas. *Oryx,* 167 S.W.3d at 443. In that case, the plaintiff's allegations against the nonresident defendant arose out of the purchase and sale of an apartment complex. *Id.* at 442–43. Following the closing of the sale, the plaintiff discovered numerous defects relating to the physical condition of the apartment complex and sued the nonresident defendant for fraud and misrepresentation. *Id.* Although the nonresident defendant's Texas contacts allegedly occurred before the due diligence period began, the plaintiff's claims for misrepresentation and fraud arose from the nonresident defendant's contacts during the due diligence period. *Id.* Consequently, the court concluded the cause of action did not relate to or arise from the plaintiff's contacts, and therefore, the trial court erred in denying the defendant's special appearance. *Id.* at 443.

 The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana,* 168 S.W.3d at 784 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228, emphasis added by *Michiana* court). We consider several factors in determining "purposeful availment." *Moki Mac,* 221 S.W.3d at 574; *see Michiana,* 168 S.W.3d at 785; *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 913–15 (Tex.App.-Dallas 2005, no pet.). First, it is only the defendant's contacts with the forum that count, not the unilateral activity of another party or a third person. *Moki Mac,* 221 S.W.3d at 574; *Michiana,* 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be purposeful rather than random, isolated, or fortuitous. *Moki Mac,* 221 S.W.3d at 574; *Michiana,* 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Moki Mac,* 221 S.W.3d 569at 574. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Michiana,* 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980)); *Lewis,* 175 S.W.3d at 914.

 In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. The following factors are considered in making that determination: (i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient

and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 232 (Tex.1991); *Lewis*, 175 S.W.3d at 915.

## B. Application of Law to Facts

We must determine whether the record supports the trial court's conclusion that specific jurisdiction existed over appellants. For purposes of this analysis only, we assume, without deciding, that the trial court's findings of fact are supported by sufficient evidence. For the following reasons, we conclude the record does not support the exercise of specific jurisdiction over appellants.

First, we address appellants' contacts related to the purchase of a heavy gauge rotary shear from DBI during the years 2000 and 2001. The record reflects the contract to purchase the shear was performable in Texas, that appellants monitored the progress under the contract by sending employees to Texas, and opened a bank account in Texas for the purpose of paying DBI in accordance with the contract. However, DBI's pleadings which allege claims for conversion, civil theft, misappropriation of trade secrets, and civil conspiracy focus upon DBI's viewing of the 2004 marketing video of DBI's competitor Alcos, which depicted the shear. DBI specifically claims "on or about September 8, 2006, DBI learned that one of its competitors, Alcos, was claiming that it could build a heavy gauge rotary shear." Other than viewing this video in 2004, nothing has been identified in the record regarding when the alleged conversion, theft, misappropriation, or conspiracy took place. Further, DBI has not alleged any facts to demonstrate how appellants' alleged liability regarding conversion, theft, misappropriation, or conspiracy arises from or is related sufficiently for jurisdictional purposes to its contacts with Texas for the purchase of the heavy gauge rotary shear from DBI in 2000 and 2001.

Second, we address the allegation by DBI that appellants "recruited and hired a Texas resident, DeClue, in 2004 to work as an employee after DeClue left DBI's employment." Appellants contend DeClue acted solely as an independent contractor for them. Nevertheless, we have been shown nothing in the record that demonstrates DeClue undertook any action in Texas on behalf of appellants arising from or relating to DBI's claims.

Third, we address the allegation that former DBI employee DeClue "had access" to the drawings of the shear. DBI explains DeClue retained a copy of a full set of DBI's drawings when his employment with DBI was terminated. However, nothing in the record reflects that DeClue retained a copy of the drawings after he left DBI, used the drawings when he became an agent of appellants, gave the drawings to appellants, imparted the information set out in the drawings to appellants, or that there was any activity in Texas with regard to wrongful action by appellants as to the drawings. Accordingly, DBI has not shown a "substantial connection" between these allegations to demonstrate DeClue's actions with Texas can be attributed to appellants.

Finally, we address the alleged contact that "[c]ircumstantial evidence supports DBI's contention that the Nova defendants are conspiring with Alcos and DeClue to use DBI's intellectual property for Alcos to build and sell heavy gauge rotary shears that compete with DBI's shears for one of the Nova entities." The

record does not include an enumeration of any acts of conspiracy that occurred in Texas. Nevertheless, acts of conspirators cannot be imputed to a nonresident defendant as the basis for the assertion of specific jurisdiction. *See Nat'l Indus. Sand Assoc. v. Gibson*, 897 S.W.2d 769, 773 (Tex.1995)(declining to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state).

 In examining the record to determine whether the evidence reflects the touchstone of jurisdictional due process, "purposeful availment," we focus on the nonresident defendant's acts, not the unilateral activity of another. *See Michiana*, 168 S.W.3d at 785. The record does not reflect that appellants purposefully availed themselves of the privilege of conducting any activity within the State of Texas which has a "substantial connection" to the claims alleged by DBI. The only contacts by appellants with the State of Texas, in this record, relate to the purchase of the shear in 2000 and 2001. There is no substantial connection demonstrated between those contacts and the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 584. Therefore, there is no act or action in this record by appellants to establish "purposeful availment."

We conclude, on *de novo* review, the trial court erred as a matter of law in concluding specific jurisdiction exists over appellants. DBI's claims against Novamerican and NTS for conversion, civil theft, misappropriation of trade secrets, and civil conspiracy do not "arise out of or relate to" any activity of appellants in Texas. *See Moki Mac*, 221 S.W.3d at 575. Accordingly, we decide appellants' first issue in their favor.

## IV. GENERAL JURISDICTION

In their second issue, appellants generally challenge the trial court's findings of fact and conclusions of law and assert the trial court erred as a matter of law in concluding there was general jurisdiction over appellants. Specifically, appellants contend the evidence respecting their website and DeClue's status as an agent of appellants does not support general jurisdiction. DBI argues the trial court properly concluded general jurisdiction exists over appellants because appellants had continuous and systematic contacts with Texas. We agree with appellants.

### A. Applicable Law

 General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. Under general jurisdiction standards, the cause of action need not arise from or relate to the activities conducted within the forum state by the nonresident defendant, but the minimum contacts analysis becomes more demanding. The contacts must be substantial. *See BMC Software*, 83 S.W.3d at 797 (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996) (orig.proceeding) (general jurisdiction requires showing that defendant conducted substantial activities within forum, more demanding minimum contacts analysis than for specific jurisdiction)).

In *Helicopteros*, the United States Supreme Court reversed the Texas Supreme Court's decision that Texas courts could exercise general jurisdiction over Helicol, a Colombian corporation with its principal place of business in Bogota, Colombia. *Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868. In that case, the facts relevant to

the general jurisdiction analysis were as follows:

"Aside from the negotiation session in Houston [which Helicol's chief executive officer attended] ..., Helicol had other contacts with Texas. During the years 1970–77, it purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from Bell Helicopter Company in Fort Worth, in that period, Helicol sent prospective pilots to Fort Worth for training and to ferry the aircraft to South America. It also sent management and maintenance personnel to visit Bell Helicopter in Fort Worth during the same period in order to receive 'plant familiarization' and for technical consultation. Helicol received into its New York City and Panama City, Fla. Bank accounts over $5 million in payments from Corsorcio/WSH drawn upon First City National Bank of Houston."

*Helicopteros,* 466 U.S. at 411, 104 S.Ct. 1868. The *Helicopteros* court rejected the Texas Supreme Court's reliance on these facts to establish general jurisdiction, stating "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868 (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923)). Further, the Court held, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868.

■ For general jurisdiction purposes, we do not view each contact in isolation. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 809 (Tex. 2002). Further, we look to the quality of

the contacts not the quantity. *Id.* at 809–10. In *Coleman,* the Texas Supreme Court, relying on the *Helicopteros* analysis, found a nonresident corporate defendant, ATCC, did not have contacts with Texas to warrant the exercise of general jurisdiction. *Id.* The court in *Coleman* explained:

"[W]e are not persuaded that the quality of ATCC's contacts support general jurisdiction as defined by the United States Supreme Court. ATCC does not advertise in Texas, has no physical presence in Texas, performs all its business services outside Texas, and carefully constructs its contracts to ensure it does not benefit from Texas laws ... Under these circumstances, we must conclude that ATCC's contacts with Texas were not continuous and systematic."

*Coleman,* 83 S.W.3d at 809–10.

■ In Texas, for the purposes of establishing personal jurisdiction, Internet use is characterized as falling within three categories on a "sliding scale." *See Reiff,* 115 S.W.3d at 705 (citing *Michel v. Rocket Eng'g Corp.,* 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.)). In *Reiff,* this court explained:

"At one end of the scale are websites clearly used for transacting business over the Internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state. On the other end of the spectrum are 'passive' websites that are used only for advertising over the Internet and are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state. In the middle are 'interactive' websites that allow the 'exchange' of information between a potential customer and a host computer. Jurisdiction in cases involving interac-

tive websites is determined by the degree of interaction. Texas courts have used this test in determining whether an internet site is sufficient to support the exercise of general jurisdiction over a defendant."

*Reiff,* 115 S.W.3d at 705–06 (citations omitted).

 Contacts of an agent may be sufficient to confer jurisdiction. An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549 (Tex. App.-Houston [14th Dist.] 2003, no pet.). The essential feature of agency is the right of control. *See Schott Glas v. Adame,* 178 S.W.3d 307, 315 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (concluding no agency relationship where sales representative sold products of defendant manufacturer and others on commission but manufacturer did not control details of sales representative's work). The right of control includes the right to dictate the means and details of the agent's performance. *Id.* Agency is generally a question of fact. *Id.*

## B. Application of Law to Facts

DBI argues the record supports the trial court's conclusion of general jurisdiction. We must determine whether the record contains facts that established substantial, continuous, and systematic contacts with Texas necessary to give rise to general jurisdiction over appellants in Texas. For purposes of this analysis only, we assume, without deciding, that the trial court's findings of fact are supported by sufficient evidence.

 In our analysis, we are guided by the principle that, for general jurisdiction purposes, we do not view each contact in isolation. *Coleman,* 83 S.W.3d at 809.

Nevertheless, after reviewing the alleged contacts in subject matter groups as articulated by DBI, or all together, we conclude the record does not support the exercise of general jurisdiction.

First, we scrutinize, again, appellants' contacts for the years 2000 and 2001 which were related to the purchase transaction for the heavy gauge rotary shear and an attempted purchase of an additional piece of machinery from DBI. These contacts are insufficient to warrant the exercise of general jurisdiction. The reasoning in *Helicopteros* is instructive. In that case, the Supreme Court stated "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868. Similar to the conclusion in the *Helicopteros* case that "mere purchases" were insufficient to warrant jurisdiction, we conclude the alleged contact that appellants "solicited and obtained other bids" is merely an isolated transaction and is not related to the causes of action raised by DBI.

Second, DBI asserts appellants' capital-raising "efforts" and "trips" to Dallas and Houston in 2005 show contacts supporting general jurisdiction. However, these contacts are not continuous and systematic. In *Helicopteros,* the Court held "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868. These "efforts" and "trips" are insufficient to support the exercise of general jurisdiction.

 As to appellants' website on the Internet, appellants argue their website is "insufficiently interactive to confer general jurisdiction." They describe their webpage as a basic site that lists facts

about Novamerican and its subsidiaries. The website includes a "contact us" page that contains addresses, phone numbers, and a web-based submission form. DBI does not allege that the website is used by customers in Texas to purchase products from appellants. Moreover, DBI concedes the webpage by itself may not confer jurisdiction. Rather, DBI relies on the testimony from a Novamerican and NTS corporate officer who said, "[I]f we could sell profitably a truckload or a significant, worthwhile quantity of steel anywhere in Texas ... we'll sell it." However, the corporate officer's comment regarding the potential for selling products in Texas is not evidence that appellants actually transact business over the Internet to establish minimum contacts with a state. *See Reiff*, 115 S.W.3d at 705–06. On this record, we conclude appellants' website falls into the category of "passive," providing little, or no, interaction between potential customers and the host computer. Appellants' website does not demonstrate a sufficient contact to support the trial court's legal conclusion regarding the exercise of general jurisdiction.

In addition, DBI urges the evidence demonstrating DeClue's status as an employee and agent of appellants supports general jurisdiction.[5] Although DBI claims DeClue was appellants' employee, appellants contend DeClue was not an employee or an "agent" because they did not exercise a "right of control" over DeClue. *See Bottle Rock*, 108 S.W.3d at 549; *Schott Glas*, 178 S.W.3d at 315. There is no evidence of an employment contract between DeClue and appellants. Moreover, at his deposition, DeClue testified he was not an employee, but a contract laborer for appellants. On this record, DBI's allegations alone are insufficient to attribute DeClue's contacts with the State of Texas to appellants for the purposes of determining jurisdiction.

We conclude that taken singly or in combination, the alleged contacts of appellants with Texas are not continuous and systematic and are insufficient to establish general jurisdiction. *See Helicopteros*, 466 U.S. at 418–19, 104 S.Ct. 1868; *Coleman*, 83 S.W.3d at 809–10. Therefore, we determine the trial court erred as a matter of law in determining general jurisdiction exists over appellants. We decide appellants' second issue in their favor.

Because of our disposition of the first two issues, concluding the trial court erred as a matter of law in finding specific and general jurisdiction exists over appellants, we need not address appellants' remaining issues on appeal. *See* Tex.R.App. P. 47.1.

## V. CONCLUSION

We conclude the trial court erred in determining that specific jurisdiction exists over appellants because appellants' al-

---

5. On appeal, DBI alleges evidence in the record demonstrates DeClue was an employee or "at a minimum, an agent" of appellants. DBI offers the following evidence:
 (a) DeClue performs work for all of the Nova entities.
 (b) DeClue has a supervisor, Rainar Beinhaus, employed by Nova.
 (c) DeClue does not work for anyone other than Nova.
 (d) Nova is DeClue's sole source of income.
 (e) DeClue has no specialized training and only a high school education.
 (f) Nova controls the type of work, the methodology of that work, and the location of that work performed by DeClue.
 (g) Nova purchases supplies that DeClue uses in performing services for Nova
 (h) DeClue was videographed in Nova's facility by Alcos, and that video is in part the subject of this lawsuit.
 (i) Rainar Beinhaus, an employee of Nova and DeClue's supervisor, made the travel arrangements for DeClue to give his deposition in this case.

leged liability did not arise from or relate to contacts they had with the State of Texas. In addition, we determine the trial court erred in concluding that appellants had systematic and continuous contacts in Texas to support general jurisdiction. Accordingly, we reverse the trial court's order denying appellants' special appearances and render judgment dismissing DBI's claims against appellants for lack of personal jurisdiction.