*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-09-00809-CV

James Edward **CAREY** III and Gwendolyn Faye Carey,
Appellants

v.

The **STATE** of Texas,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-05556
Honorable Andy Mireles, Judge Presiding[1]

Opinion by:   Marialyn Barnard, Justice

Sitting:      Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  July 21, 2010

AFFIRMED

This interlocutory appeal arises from the trial court's denial of appellants', James Edward

Carey III and Gwendolyn Faye Carey ("the Careys"), special appearances. The Careys raise four

issues, contending the trial court erred in denying their special appearances. We affirm the trial

court's denial of the Careys' special appearances.

---

[1]   The Honorable Andy Mireles signed the order subject to this appeal; however, the Honorable Andy Mireles passed away. The Honorable Renée McElhaney currently presides over the 73rd Judicial District Court.

**BACKGROUND**

Escapes Midwest and Escapes Austin are Nevada limited liability companies with their principal offices in Florida. Escapes Midwest operates in San Antonio, Texas, and Escapes Austin operates in Austin, Texas. James Edward Carey III is the Chief Executive Officer, Manager, or Governing Person of both companies, and his wife, Gwendolyn Faye Carey, is the Director, Manager, or Managing Member of both companies. Both companies sold travel-related software licenses, known as Global Escapes to Texas consumers for approximately three years. These sales operations ceased in 2008.

On April 1, 2009, the State brought suit against the Careys, along with defendants Escapes Midwest and Escapes Austin, for violations of the Deceptive Trade Practices-Consumer Protection Act, the Contest and Gift Giveaway Act, the Finance Code, and the Telemarketing Disclosure and Privacy Act on the grounds that the Careys fraudulently obtained millions of dollars from Texas consumers through misrepresentations in the advertising and sale of the travel-related software licenses. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41 et. seq. (Vernon 2002); TEX. FIN. CODE ANN. §§ 345.052(d) & 345.304 (Vernon 2006); TEX. BUS. & COM. CODE ANN. §§ 304.001 et. seq. (Vernon 2009); TEX. BUS. & COM. CODE ANN. §§ 621.001 et. seq. (Vernon 2009). On April 2, 2009, the State obtained a temporary restraining order against the Careys. Later that month, the State and the Careys entered into an agreed extension of the temporary restraining order and an agreed temporary injunction against the Careys.

The Careys then filed special appearances, objecting to the trial court's jurisdiction, and an original answer. In their special appearances, the Careys claimed the trial court lacked personal jurisdiction because neither of them are residents of Texas, have minimum contacts with Texas, were served with citation in Texas, have applied or conducted business in Texas,

maintained an office or other place of business in Texas, purposefully availed themselves to the benefits of Texas, contracted by mail or otherwise with a Texas resident, committed a tort in whole or part in Texas, or recruited Texas residents for employment. The Careys also claimed subjecting them to jurisdiction in Texas would offend the traditional notions of fair play and substantial justice, and would be inconsistent with the constitutional requirements of due process. After a hearing, the trial court denied the Careys' special appearances. This appeal followed.

## STANDARD OF REVIEW AND BURDEN OF PROOF

A trial court's denial of a special appearance is an appealable interlocutory order. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon 2008); *Boyd v. Kobierowski*, 283 S.W.3d 19, 21 (Tex. App.—San Antonio 2009, no pet.). In reviewing a special appearance, we review the trial court's findings of fact for both legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Boyd*, 283 S.W.3d at 21. Our determination of whether a trial court has personal jurisdiction over a defendant is a question of law which we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 794. In a de novo review, we exercise our own judgment and redetermine each legal issue without deference to the trial court. *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 151 (Tex. App.—San Antonio 2006, no pet.).

"[S]pecial-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *see also Haddad v. ISI Automation Intl., Inc*, No. 04-09-00562-CV, 2010 WL 1708275, at *4 (Tex. App.—San Antonio, April 28, 2010, no pet. h.). Initially, the plaintiff bears the burden to plead sufficient allegations to bring a nonresident defendant within the scope of the long-arm statute outlined by Texas. *Id.*; *see also BMC*

*Software*, 83 S.W.3d at 793. To meet this burden, the plaintiff does not need to detail all the theories or bases of personal jurisdiction upon which he relies; rather, the plaintiff needs only to plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute. *Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet). Once the plaintiff meets this burden, the burden shifts to the defendant challenging jurisdiction through a special appearance. *Kelly*, 301 S.W.3d at 658; *BMC Software*, 83 S.W.3d at 793; *Haddad*, 2010 WL 1708275, at *4. The defendant must negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* A defendant can negate jurisdiction by showing the evidence is factually or legally insufficient. *Id.*

If, however, the plaintiff fails to meet his or her initial burden of pleading jurisdictional allegations, then the defendant can satisfy its burden by simply proving it is a nonresident. *Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 441 (Tex. App—San Antonio 2005, no pet.). If the defendant proves his or her nonresidency status or otherwise negates personal jurisdiction, then the burden returns to the plaintiff, who must show as a matter of law the trial court has personal jurisdiction over the defendant. *Id.*

### DISCUSSION

### *Waiver of Special Appearance*

Before we address the substance of the Careys' issues on appeal, we must first consider the State's argument that the Careys entered general appearances and thereby waived their special appearance complaint.

A special appearance permits a nonresident defendant to object to personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a; *Boyd*, 283 S.W.3d at 21. But, a nonresident defendant may be subject to personal jurisdiction in a Texas court if that defendant enters a general appearance.

*Boyd*, 283 S.W.3d at 21 (citing TEX. R. CIV. P. 120; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam)). "A general appearance entered before a special appearance waives any special appearance complaint." *Boyd*, 283 S.W.3d at 21 (citing *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304-05 (Tex. 2004) (per curiam)). "[A] party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito*, 142 S.W.3d at 304; *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998).

The relevant facts are not in dispute. In April 2009, the Careys entered into an agreed extension of the temporary restraining order and agreed temporary injunction, enjoining them from, among other things, selling their travel-related software licenses. The State argues that by agreeing to those trial court orders prior to filing their special appearances, the Careys made general appearances, and therefore waived any special appearance complaint. *See Liberty Enters., Inc. v. Moore Transp. Co.*, 690 S.W.2d 570, 571-72 (Tex. 1985); *Phoenix Fireworks, Mfg. v. DM Plastics*, No. 04-98-00209-CV, 1998 WL 354927, at *2 (Tex. App.—San Antonio, June 30, 1998, no pet.). Although in some instances an agreement to a trial court order constitutes a general appearance, Texas courts have also recognized that appearing in matters ancillary and prior to the main suit does not constitute a general appearance in the main suit and will not waive a plea to the jurisdiction. *See, e.g., Turner v. Turner*, No. 14-98-00510-CV, 1999 WL 33659, at *3 (Tex. App.—Houston [14th Dist.], Jan. 28, 1999, no pet.) (holding attorney's presence at temporary restraining order hearing did not constitute general appearance because hearing related to ancillary matter); *In re M.G.M*, 163 S.W.3d 191, 200-01 (Tex. App.—Beaumont 2005, no pet.) (refusing to hold defendant waived special appearance when party

entered into agreed collateral order); *Perkola v. Koelling & Assocs., Inc.*, 601 S.W.2d 110, 111-12 (Tex. Civ. App.—Dallas 1980, writ dism'd) (holding defendant did not waive his plea by contesting interlocutory temporary injunction). In fact, this court held the filing of a writ of mandamus and motion for emergency relief did not waive a defendant's special appearance because, among other things, "an original proceeding is a formally independent matter." *See Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 267 (Tex. App.—San Antonio 2002, pet. dism'd). Recognizing the distinction between the main suit and an ancillary proceeding, we hold the Careys' agreement to the extension of the temporary restraining and temporary injunction orders do not constitute general appearances. *See id*. Accordingly, we hold the Careys did not waive their special appearances by agreeing to an extension of the temporary restraining order or agreed temporary injunction. *See id.*

### *Personal Jurisdiction Substantive Law*

Texas courts may assert personal jurisdiction over a nonresident defendant if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac*, 221 S.W.3d at 574; *see also Kelly*, 301 S.W.3d at 658; *Haddad*, 2010 WL 1708275, at *3. The long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (Vernon 2008) (providing list of acts that may constitute doing business in Texas). The statute describes what acts may constitute doing business in Texas, including, pertinent to this appeal, "contracting by mail or otherwise with a Texas resident." *Id.* § 17.042(1).

The broad "doing business" language of the Texas long-arm statute allows a trial court's jurisdiction to extend "as far as the federal constitutional requirements of due process will

allow." *Kelly*, 301 S.W.3d at 658; *Haddad*, 2010 WL 1708275, at *3. Due process is not violated when a nonresident defendant established minimum contacts with the forum state and the trial court's exercise of jurisdiction comported with the traditional notions of fair play and substantial justice. *Id*. Minimum contacts with the forum state are established when a nonresident defendant purposefully avails itself of the advantages of conducting activities within the forum state, thereby invoking that state's benefits and legal protection. *Id*. To determine whether a nonresident defendant has purposefully availed itself, courts look to (1) the defendant's, not the plaintiff's or third party's, contacts with the forum state, (2) whether the contacts are purposeful in contrast to random, fortuitous, or attenuated, and (3) whether the nonresident defendant sought an advantage or profit by availing itself of jurisdiction. *Haddad*, 2010 WL 1708275, at *3.

A Texas court has personal jurisdiction over a nonresident defendant if that defendant's minimum contacts give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 793; *Haddad*, 2010 WL 1708275, at *3. General jurisdiction is established when that defendant's contacts within the forum state are continuous and systematic; therefore jurisdiction is proper even if the cause of action does not arise from or relate to that defendant's contacts. *Id*. Specific jurisdiction arises when the defendant's alleged liability is related to or arises from an activity performed in the forum state. *Id*.

### *Analysis*

In their first issue, the Careys contend the trial court erred in denying their special appearances because the State failed to meet its initial burden and plead sufficient allegations to bring them within the scope of the Texas long-arm statute. *See Kelly*, 301 S.W.3d at 658; *BMC Software*, 83 S.W.3d at 793; *Haddad*, 2010 WL 1708275, at *4. Specifically, the Careys argue

the petition's allegations refer to all the defendants as an aggregate group and fail to specify which alleged acts were committed by the Careys. According to the Careys, a boilerplate claim that the nonresident individual defendants participated in the alleged acts of corporate defendants within Texas is insufficient to satisfy the State's burden. The Careys conclude they were therefore only required to prove nonresidency, and their proof on this point was undisputed.

Although we recognize that a failure to plead jurisdictional allegations requires a defendant to simply prove nonresidency to sustain its burden, we disagree with the Careys' contention that the State did not plead sufficient jurisdictional allegations invoking the Texas long-arm statute. *See Oryx Capital Int'l*, 167 S.W.3d at 441. In its original petition, the State specifically named each defendant, including each of the Careys, and then began referring to all the defendants collectively as "Defendants." The State alleged the defendants, without making the appropriate disclosures, solicited Texas consumers to attend sales presentations and used false, deceptive, and misleading acts to persuade consumers to enter into contracts for travel-related software licenses. In a separate section of the petition entitled "Liability of James Edward Carey III and Gwendolyn Faye Carey, Individually," the State alleged the Careys were directly and indirectly engaged in the "deceptive acts and practices by making false or misleading material misrepresentations to consumers" after knowing such representations were false and misleading. The State further alleged the Careys made these false representations with the intent to induce Texas consumers to rely on the representations and enter into purchase agreements for the travel-related software licenses. Finally, the State alleged that "JAMES EDWARD CAREY III and GWENDOLYN FAYE CAREY are individually liable for fraudulent or tortious acts committed while in the service of their corporations" and "knowingly

participated in the wrongdoing and actions of Defendants, ESCAPES MIDWEST, LLC and ESCAPES AUSTIN, LLC."

These allegations, when considered together and liberally construed, assert the Careys committed fraudulent business practices and misrepresentations in Texas, which is all that is required under the Texas long-arm statute. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (holding pleadings are liberally construed in favor of pleader when determining plea to jurisdiction and whether sufficient facts were plead to give trial court jurisdiction); *Ji-Haw Indus. Co., Ltd. and JBT Int'l, Inc. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822, at *2 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (holding plaintiff alleged sufficient facts to bring nonresident defendant within Texas's long-arm statute by specifically naming nonresident defendant along with other defendants, referring to defendants collectively, and, in a separate section, asserting nonresident defendant was legally responsible for defendants' actions). Although the Careys rely on the Texas Supreme Court's recent holding in *Kelly v. Gen. Interior Const., Inc.* to support their contention that the State's petition failed to specifically allege what act by either of the Careys occurred in Texas, we point out that in *Kelly*, the plaintiff's "live pleading contain[ed] no allegations that the [defendants's] wrongdoing occurred in Texas." 301 S.W.3d at 660-61. Here, unlike the plaintiff in *Kelly*, the State asserted the defendants', including the Careys', actions occurred in Texas.

By describing the allegations against the defendants and asserting the Careys were individually liable for the fraudulent practices and misrepresentations, we conclude the State alleged sufficient jurisdictional facts to bring the Careys within the Texas long-arm statute. *See id.* Accordingly, the burden shifted to the Careys to negate all basis of personal jurisdiction, and not merely prove nonresidency. *See Oryx Capital Int'l*, 167 S.W.3d at 441.

Turning to the Careys' next issue on appeal, the Careys allege the State's allegations regarding their contacts with Texas are insufficient to establish general or specific jurisdiction. Here, the facts upon which the State relies to establish minimum contacts are undisputed. The Careys reside in Florida and have never resided in Texas. James is the Chief Executive Officer, Manager, or Governing Person of Escapes Midwest and Escapes Austin; Gwendolyn is the Director, Manager, or Managing Member of Escapes Midwest and Escapes Austin. For three years, both companies sold Texas consumers travel-related software licenses, which provided consumers with travel deals. With respect to James, the evidence shows James made two trips to Texas to make arrangements for the Escapes Midwest office. James visited the Escapes Midwest's and Escapes Austin's offices once or twice a year over an approximate three-year period. During these trips, James was involved in basic product training and met with staff. James stated he reviewed "scripts" for use by the Escapes businesses, and indicated he was aware that some Texas consumers complained about the gifts related to his companies' travel-software products and presentations. In fact, he responded to individual consumer complaints on more than one occasion. James also indicated he signed personal guarantees regarding obligations undertaken by his Escapes businesses and contracts for his Escapes businesses. Finally, James indicated he received proceeds from the sale of the retail installment sales contracts to third-party finance companies. In all, James traveled to Texas approximately six to ten times for the purposes of conducting business on behalf of both companies.

With respect to Gwendolyn, the evidence showed she twice accompanied James on his trips to Texas, but allegedly for the purposes of visiting San Antonio as a tourist. Gwendolyn, however, also indicated she received proceeds from the sale of the retail installment sales contracts to third-party finance companies, was aware that some Texas consumers complained

about the gifts related to her companies' travel-software products and presentations, and signed guaranteed obligations and loans for the businesses. We hold this participation in the Escapes businesses, which was aimed to extract profits from Texas consumers supports specific jurisdiction with regard to each of the Careys. *See Gen. Elec. v. Brown & Ross, Int'l Distrib., Inc.*, 804 S.W.2d 527, 532 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (highlighting fact that nonresident defendant's involvement in conspiracy suggested he had knowledge his actions would affect consumers in that state and subject him to jurisdiction in that forum).

Here, the evidence shows the Careys were involved in their company's alleged fraudulent sales practices and had knowledge of Texas consumers' complaints. After reviewing these facts, it is clear the Careys purposely availed themselves of the benefits of the forum state, and the State's causes of action arose from and are related to the Careys' contacts or activities. *See Haddad*, 2010 WL 1708275, at \*5. In making this determination, we look only to the Careys' contacts with Texas, and when considering these facts together, conclude they are sufficient to establish purposeful availment. *See id.* By doing business in Texas, the Careys should have anticipated being haled into a Texas court. To bring the Careys into a Texas court on the basis of these contacts would not offend the traditional notions of fair play and substantial justice. *See Kelly*, 301 S.W.3d at 658; *Haddad*, 2010 WL 1708275, at \*3, \*6. Accordingly, we overrule the Careys' second issue and hold the trial court did not err in concluding it had specific jurisdiction over the Careys.

Because we have determined that specific jurisdiction exists based on the long-arm statute and the Careys' minimum contacts with Texas, we need not determine whether general jurisdiction exists.

## CONCLUSION

We hold the Careys failed to negate specific jurisdiction. The contacts alleged and proved by the State met the minimum contacts requirements for specific jurisdiction. Bringing the Careys into a Texas court based on these contacts would not offend due process and the traditional notions of fair play and substantial justice. Accordingly, we affirm the trial court's order denying the Careys' special appearances.

Marialyn Barnard, Justice